Wheeler v. City of Poplar Bluff.

WHEELER, Appellant, v. CITY OF POPLAR BLUFF.

Division Two, March 28, 1899.*

1. **Cities:** IMPROVEMENT OF STREETS: ORDINANCE: ESTIMATES.  A city of the third class has no power, in contracting for the grading of its streets, to dispense with the special ordinance for the improvement required by section 1495, Revised Statutes 1889, nor with the estimates required by section 1497.  And unless such special ordinance was passed and estimates made, he who did the work can not recover the cost thereof from the city.

2. ———: ———: ———: ASSESSED AGAINST ABUTTING PROPERTY.  Until a city council declares by ordinance that the revenues of a city are not sufficient to justify the paying, out of the city treasury, of the cost of bringing a street up to the established grade, the cost of such work can not be taxed against the abutting property.

3. ———: ———: ———: TAX BILLS.  Nor can tax bills be issued against such property, until the council by ordinance, or by resolution passed with the same formalities required to pass an ordinance, orders the grading to be done, and contracts therefor, or orders a levy of taxes for the purpose of paying for the work.

4. ———: ———: RESOLUTION.  In the absence of an affirmative showing that a resolution of the city council was passed with the same formalities required for the passage of an ordinance, it will be held that it was not so passed.

5. ———: ———: GENERAL ORDINANCE.  The passing of a mere general ordinance establishing the grade of streets for a city, is not an ordinance requiring certain streets to be graded up to the standard; nor will it dispense with the necessity for such ordinance.

6. ———: ———: ESTOPPEL.  As the doctrine of estoppel can not be invoked to validate a contract which a municipal corporation has no power to make, a city is not estopped to deny the validity of a contract under which certain streets were graded, although the work was done according to contract and the city received it and has the benefit thereof.

*NOTE.—Decided February 21, 1899.  Motion for rehearing filed.  Rehearing denied March 28, 1899.

7. ———: ———: TAX BILLS IN LIEU OF MONEY. Where a contractor agreed to accept special tax bills against abutting property in full payment for the grading of certain streets, and he assumed all risks for failure by the city to comply with the statutes in authorizing said work, and he did the work, and the tax bills were issued and delivered to him, but afterwards proved to be worthless because the city had not complied with the statute governing such matters, he can not recover of the city the cost of the improvements made by him. ⸌

*Appeal from Madison Circuit Court.*—Hon. James D. Fox, Judge. ⸜

Affirmed.

Geo. L. Edwards for appellant.

(1) The charter of defendant expressly authorized it to make such contract as sued upon, and the cost of the improvement contracted for defendant's charter provided should be paid from an assessment upon all the taxable property within the limits of the city. R. S. 1889, secs. 1495 and 1514; Poplar Bluff to use v. Hoag, 62 Mo. App. 672. (2) The resolution or ordinance adopted October 17, 1892, and in evidence, was sufficient to authorize the making by defendant of contract sued upon. R. S. 1889, sec. 1514; City to use v. Knott, 49 Mo. App. 612; Railroad v. Governor, 23 Mo. 353; St. Louis v. Foster, 52 Mo. 513; Cape Girardeau v. Riley, 52 Mo. 424; Becker v. Washington, 94 Mo. 395; State ex rel. v. Mead, 71 Mo. 266; Barber Asphalt Paving Co. v. Hunt, 100 Mo. 22; Hamilton v. Rutherford, 97 Mo. 543; Water Co. v. Aurora, 129 Mo. 578; 1 Dillon on Mun. Corps. (4 Ed.), sec. 310; Asphalt Paving Co. v. Ullman, 137 Mo. 568. (3) This being an executed contract on the part of the contractor within the corporate powers of defendant, and from which it, and its citizens whom it represents, have received large benefits, it is estopped to deny its validity because of irregularity in its execution, if any such there be, or because in its execution the mode pointed out by its

charter was not observed.   Page v. Board of Education, 59 Mo. 264; Herman on Estop., sec. 1222; Rose v. Baltimore, 51 Md. 256;  Chicago v. Wheeler, 25 Ill. 478;  Higgins v. Chicago, 18 Ill. 276; Maher v. Chicago, 38 Ill. 266; Martel v. East St. Louis, 94 Ill. 67;  Logan Co. v. Lincoln, 81 Ill. 156; Leavenworth v. Laing, 6 Kan. 274; Sleeper v. Bullen, 6 Kan. 300;  Bill v. Denver,  29 Fed. 334;  Illinois Trust & Savings Bank v. Arkansas City, 74  Fed. 293;  Warner v. New Orleans, 87 Fed. 827;  Norwalk Gaslight Co. v. Borough of Norwalk, 63 Conn. 522; Mound City v. Snoddy, 35 Pac. 1112; Tappan v. Commission Co., 59 N. J. L. 371; Bigelow on Estoppel [5 Ed.], pp. 466 to 470; Nat. Tube Works Co. v. City of Chamberlain, 5 Dak. 54.   (4)   If this contract had been voidable for irregularities it has been made legal and valid by ratification.    "A municipal corporation may ratify the unauthorized act and contracts of its officers or agents which are within the scope of the corporate powers. Ratification may frequently be. inferred from acquiescence after knowledge of all the material facts or from acts inconsistent with any other supposition."   1 Dillon on Mun. Corps. (4 Ed.), secs. 463, 464, 465;  Water Co. v. Aurora, 129 Mo. 583; Leavenworth v. Mills, 6 Kan. 297; Maher v. Chicago, 38 Ill. 266.   (5)   Plaintiff is entitled to recover upon the contract sued upon, and the measure of his damages is the contract price with interest. Fisher v. St. Louis, 44 Mo. 482; Oster v. Jefferson City, 57 Mo. App. 485; Hitchcock v. Galveston, 96 U. S. 341; Memphis v. Brown, 20 Wall. 289; 1 Dillon on Mun. Corps. (4 Ed.), secs. 480 to 484 and 457; Michael v. Police Jury, 3 La. Ann. 123; Ib., 9 La. Ann. 67; Tounier v. Municipality, 5 La. Ann. 298; Newcomb v. Police Jury, 4 Rob. (La.) 233; Maher v. Chicago, 38 Ill. 266; Chicago v. People, 48 Ill. 416; Chicago v. People, 56 Ill. 327; Leavenworth v. Mills, 6 Kan. 288; Sleeper v. Bullen, 6 Kan. 300.

HENRY N. PHILLIPS for respondent.

(1) The defendant never did, nor did its charter authorize it to, enter into the alleged contract sued upon in this cause. Secs. 1495, 1496, 1498 and 1501. Section 1514 has no application or bearing in this case whatever. (2) The resolution or ordinance adopted by the city council on October 17, 1892, and offered in evidence, was insufficient to authorize the doing of anything whatever, as it was not passed under the formalities required by law; that is to say, it was never read the first, second and third times, and a vote taken upon its final passage by the ayes and noes, and approved by the mayor. City to use v. Knott, 49 Mo. App. 612; Poplar Bluff v. Hoag, 62 Mo. App. 672; Keating v. Kansas City, 84 Mo. 419; Moore v. Cape Girardeau, 103 Mo. 475; Cape Girardeau v. Fougeu, 30 Mo. App. 551. (3) The burden is on the plaintiff in this case to show the formal adoption of the resolution to make it an ordinance to perform the same office, and as they offer the record, and the record does not show it, and it does not so appear upon the face of it, it is but a resolution, and entirely fails as an authority upon which to base this or any action. Poplar Bluff v. Hoag, 62 Mo. App. 676. (4) Plaintiff's third point, that this is an executed contract, and the citizens of the defendant have received large benefits therefrom, and the city is estopped, is an assumption without foundation in fact or in law. Heidelberg v. St. Francois Co., 100 Mo. 69; Snyder v. Railroad, 112 Mo. 539. (5) The contract is absolutely void, and can not be ratified by the corporation, and the corporation is not liable in any amount in the premises. There is no evidence of ratification in this case. State v. Bank, 45 Mo. 544; Heidelberg v. St. Francois Co., 100 Mo. 69; Snyder v. Railroad, 112 Mo. 539; Sturgeon v. Hampton, 88 Mo. 213; Bank v. Gray, 63 Mo. 39; Thrush v. Cameron, 21 Mo. App. 398; Rowland v. Gallatin, 75 Mo. 134; Stewart v. Clinton, 79 Mo. 603. (6) Not

only the charter of the city, but the inhibition of article X, section 12 of the Constitution of the State, the fundamental law of the State, was written across and incorporated in said contract, as well as the fact that no ordinances had been passed to authorize the making of such a contract; and section 9 of ordinance number 188 was especially written across said contract. He took it subject to the charter of the city, the Constitution of the State, and the fact that no ordinance had been passed authorizing such contract. He was required to know the authority of the party or agent with whom he dealt. Saline Co. v. Wilson, 61 Mo. 207; Railroad v. Horton, 102 Mo. 56; Brown Estate v. Wayne Co., 123 Mo. 464; Perkins v. St. Louis, 4 Mo. App. 322; Maupin v. Franklin Co., 67 Mo. 527; Cheney v. Brookfield, 60 Mo. 53; Wolcott v. Lawrence Co., 26 Mo. 275; Steines v. Franklin Co., 48 Mo. 167; Sturgeon v. Hampton, 88 Mo. 213; Nevada v. Eddy, 123 Mo. 557; Keating v. Kansas City, 84 Mo. 418.

BURGESS, J.—This is an action by plaintiff as assignee of one Z. T. Allbright against the city of Poplar Bluff, a city of the third class, to recover the sum of $6,042.52, with interest, alleged to be due plaintiff as such assignee on a contract entered into between Allbright and defendant city, for reducing to the established grade parts of Main and Vine streets in said city.

The answer admits the incorporation of defendant city, the passage and publication of the resolution of October 17, 1892, mentioned in the petition, and also the passage and approval of an ordinance on November 21, 1892, as entitled, numbered 188, which is also mentioned in plaintiff's petition, but denies that this ordinance gave Allbright, or any other person, any power, authority, or any direction to do any of the acts alleged to have been done by plaintiff or Allbright, or that said ordinance was in any way connected with or referred to said resolution, or that it gave to it any force or validity. Denies defendant's liability under the alleged contract,

or in any manner whatever.    Alleges that Wheeler was fully paid for any and all work of any and all kinds that he or All-bright executed within said city, under the alleged contract or otherwise, and denies all other allegations in the petition.

The case was tried by the court, a jury being waived. No declarations of law were asked or given.

There was judgment for defendant, hence this appeal.

On the seventeenth day of October, 1892, defendant city passed a resolution declaring it necessary that parts of Main and Vine streets in the city be reduced to the established grade, and the general revenue fund of said city not being in a condition to warrant an expenditure for any such purposes, that the cost thereof be paid by special tax bills issued against all lots and pieces of ground on either side of such streets the distance improved or to be improved in proportion to the front feet thereof.    It was also further resolved that the resolution be published in "The Advocate," a newspaper published in the city of Poplar Bluff, for two consecutive weeks.

On November 21, 1892, defendant passed an ordinance, number 188, by which the manner and method of reducing its streets to the established grade are prescribed. This seems to be a general ordinance, having reference to no particular street or streets.

Thereafter defendant caused preliminary estimates of cost of reducing to the established grade parts of Main and Vine streets, as alleged in the petition, to be made and sub-mitted to it, which it accepted and approved. It then caused its street commissioner to advertise for bids for grading parts of the streets for which compensation is claimed in this case; and in pursuance thereof Allbright became the purchaser of the contract, which was awarded to him and perfected on the ninth day of March, 1893.    On May 10, 1893, Allbright assigned his contract to the plaintiff.

The grading was done according to contract, and the work accepted by defendant.    Thereafter defendant by res-olution of its board ordered that a special assessment be made

for the cost of said work against the abutting property hold-
ers, and that special tax bills be issued against them respect-
ively therefor and to be delivered to Wheeler, which was
done.

The tax bills proved to be worthless, having been issued
without authority, but Wheeler collected upon them $1,636,
so that if entitled to recover at all, it is the balance due under
the contract, less amount collected.

Plaintiff insists that by virtue of either section 1495 or
section 1514, of defendant's charter (Revised Statutes 1889),
it had express power to enter into the contract sued on, and
that such power is neither limited nor in any way modified by
any other section of its charter except section 1497, which
provides that before the council shall make any contract for
building bridges, sidewalks, etc., and grading any street, etc.,
estimates of the cost thereof shall be made by the proper
officer and submitted to the council, "and no contract shall be
entered into for any such work or improvements for a price
exceeding such estimates." But we are unable to concur in
this view.

Section 1514, in our opinion, confers no additional pow-
ers upon cities, with respect to the improvement of streets,
not conferred by section 1495. Being *in pari materia*, it
cannot be held to dispense with the necessity of a special ordi-
nance providing for the improvement as required by section
1495, nor with the estimate provided for in 1497. Indeed
the section seems to have been principally designed to point
out the mode of securing compensation as provided for by
section 1524, and for the reversion of title in case of vacation
of streets, alleys, or squares, and for reopening the same and
to protect private owners against changes of grade.

By section 1495, *supra*, cities of the third class are au-
thorized by ordinance to open and improve streets, and make
sidewalks, and build bridges, culverts and sewers, and for the

purpose of paying for opening, widening and bringing to grade all streets, avenues and alleys, and for the building of bridges, culverts and public sewers, and for foot walks across streets, etc., have the power to assess all taxable property within the limits of the city, not exceeding five mills on the dollar for these purposes in any one year.

Section 1498 provides that when the city council shall deem it necessary to pave, macadamize, curb, gutter, or otherwise improve any street, etc., for which a special tax bill is to be levied, it shall by resolution declare such work necessary, and shall cause such resolution to be published, etc., that the resident owners of property liable to taxation therefor may have the right to protest against the improvement, if they see proper, and if a majority of them do not protest against the improvement, and not otherwise, to cause such improvement to be made, and to contract therefor and to levy taxes to pay for the same.

As the city council did not in the first place declare by ordinance that in their judgment the revenues of the city would not justify the payment of the cost of bringing the streets upon which the work was done up to grade, the cost thereof could not be charged against the abutting property under the provisions of section 1495, *supra*. Nor could tax bills be issued against such property under section 1498, because the council did not by ordinance cause the grading to be done, contract therefor, or order a levy of taxes for the purpose of paying for the work, which could only be done by ordinance (Moore v. Cape Girardeau, 103 Mo. 470; Nevada to use v. Eddy, 123 Mo. 546), or by resolution passed with the same formality as an ordinance; and in the absence of an affirmative showing, as in the case at bar, that the resolution was passed with the same formalities required in the passage of an ordinance it would seem to be invalid. Nor can a general ordinance authorize such work to be done. [Cape Girardeau

v. Fougeu, 30 Mo. App. 551; Poplar Bluff to use v. Hoag, 62 Mo. App. 672.]

By section 1501 it is provided that, "The city council may, by ordinance, include in the special assessment the cost of bringing to the established grade any street . . . proposed to be improved under the provision of section 1498, when in their opinion or judgment the general revenue fund of the city is not in a condition to warrant an expenditure for bringing the same to the established grade: Provided, that the resolution declaring such work necessary to be done, and published in the newspaper doing the city printing, as required in said section, shall, in addition to the other work of improvement therein provided for, include and describe the work of bringing such street, avenue, square or alley, or part thereof, to the established grade. In all such cases where such work is authorized by virtue of such a resolution, and is contracted for in pursuance thereof, the bringing to grade as above described shall be included in the same contract with other work provided for therein, and tax bills shall be issued in payment for all said work as may be provided for by ordinance."

Judge Biggs in passing upon this section, and the same contract sued on in this case, in Poplar Bluff to use v. Hoag, 62 Mo. App. loc. cit. 675, said: "The meaning of the foregoing section is reasonably plain. If an unimproved street needs to be opened and improved, and the general revenue fund of the city is such that, in the judgment of the city council, an expenditure for bringing the street to grade at the public expense would not be warranted, then the cost of it may be made a special charge against the adjacent lots, provided the city council shall first declare by ordinance that, in their judgment, the revenues of the city would not justify the expense of the improvement, and then include, in the published resolution for the other improvements of the street, a description of the. additional work. When these things have

been done, and no protest is made, the entire work may be ordered; and the last clause of the section provides that the entire work shall be included in the same contract. Now it is quite evident that in the case at bar the city council has failed to take the necessary steps to charge the defendant's property with the cost of bringing the street to grade. In the first place it passed no ordinance, but simply declared by resolution that. in its judgment the revenue of the city would not justify the grading of the street at the public expense. This did not meet the requirements of the statute, unless the resolution was adopted by the same formalities required in the passage of ordinances, which was not the case, as appears from the averments in the petition." [Springfield to use v. Knott, 49 Mo. App. 613; Cape Girardeau v. Fougeu, 30 Mo. App. 551.]

Such work as that for which compensation is claimed can only be done in cities of the third class by ordinance or resolution passed with the same formality, and plaintiff's contention, that without ordinance or resolution to authorize it, defendant's council by its charter, was empowered to enter into the contract sued upon is without authority to support it.

As we have said there was no ordinance to authorize the work in question. The resolution of the council of October 17, 1892, did not authorize it. Nor did ordinance number 188, as that was a general ordinance, having no special reference to the grading in question, and did not authorize the work. An ordinance substantially the same as this, in connection with a preliminary resolution also like the one of October 17, 1892, was before the court in Nevada to use v. Eddy, 123 Mo. loc. cit. 558, and the court with respect thereto observed that "the resolution is the preliminary expression of opinion of the council that the improvement is necessary. . . . The resolution was never intended to dispense with the ordinance. Each performs its separate function." It was ruled in that case that cities of the third class can only

improve their streets by passing a lawful ordinance for that purpose, and that "the passing of a mere general ordinance prescribing the specifications as to guttering and curbing, etc., when deemed necessary, is not an ordinance requiring certain streets to be improved."

It is further insisted that as the work was done according to contract and defendant received it and derived its benefits, it should be estopped from denying the validity of the contract.    But whatever the rule may be elsewhere it has been ruled by this court that the doctrine of estoppel "can not be applied to validate a contract which the corporation had no power to make."    [State ex rel. v. Murphy, 134 Mo. 548, and authorities cited.]

Moreover the contract sued on provides that "upon completion of the work contemplated by the said contract by the first party, Z. T. Allbright, said second party would cause an assessment to be made against all of the property owners owning lots or pieces of ground abutting on said street to be improved, and the levying of a special tax thereon to be paid and special tax bills to be issued in conformity with said assessment levied in favor of the said first party, in full payment of said street grading, said party (Allbright) hereby agreeing to assume all risks for failure to comply with said ordinances and laws aforesaid by the said second party. . . . . . . And the said first party hereby agrees to accept said special tax bills, issued as aforesaid, in full payment and discharge of said second party for the doing of work herein contracted for." To permit plaintiff to recover in this action would be to do so in violation of the terms of his own contract, upon which he seeks to recover.

In passing upon a case very much like this in Keating v. The City of Kansas, 84 Mo. loc. cit. 418, SHERWOOD, J., in speaking for the court said:    "It is well settled law, that for the non-exercise or the defective exercise of its public or legislative power, a municipal corporation is not liable to any

one who suffers injury in consequence thereof. [2 Dillon on Mun. Corp. 949.] In the attempted passage of the defective ordinance, the city, of course, was engaged in the exercise of legislative powers. [McCormick v. Patchin, 53 Mo. 33.] And for the negligent exercise of such powers no action lies. Keating was bound to take notice, at his peril, of the defective ordinance, when dealing with the officers of the defendant, and can not urge against the city in this suit, such defects or want of power in such officers." [Citing 1 Dillon on Mun. Corp. 447; Cheeney v. Brookfield, 60 Mo. 53.] . . . . . . . "If after all this, he can indirectly recover from the city, it must be confessed that neither the city charter nor his contract have any binding force. Both the charter and the contract, it will be observed, are so broad and comprehensive in their terms, that any recovery against the city is denied to plaintiff in any form of action whatever. The requirements of the charter in such cases is the only touchstone of corporate liability. Upon that, the contractor with the city must rely. To establish any rule in order to meet the hardships of this particular case, would result in incalculable mischief, and the overthrow of the organic law of the city."

Our conclusion is that the judgment of the court below should be affirmed. And it is so ordered. GANTT, P. J., and SHERWOOD, J., concur.