THE BARBER ASPHALT PAVING COMPANY, to use, etc., Appellants, v. M. O'BRIEN et al., Respondents.

### Kansas City Court of Appeals, January 6, 1908.

1. **JURY: Right to: Waiver: Record.** The law guards with care the right to trial by jury and regards with suspicion the slightest encroachment on the enjoyment of such right; but such right may be waived, and where the record, as in this case, shows a submission of the cause to the court without objection or exception the waiver will be presumed.

2. **TAXBILLS: Preparation of Plans: Jurisdiction.** It is the duty of the city engineer to prepare plans for all improvements, and he cannot delegate that authority, especially to a prospective bidder; and such matter is jurisdictional and destroys the validity of the taxbills issued under the proceeding.

3. ————: ————: ————: **Filing.** Such plans and specifications ought to be filed in the designated office at the time of the passage of the resolution for the benefit of the property-owners; and the failure to do so defeats the purpose of the law and invalidates all subsequent proceedings.

4. ————: **Filing: City Engineer: Evidence.** In an action to enforce a taxbill against a property-owner the city engineer is a competent witness to prove that his filing mark on the plans and specifications for the work is not true but antedated the lodgment of such papers in his office, since he can make no record that will bind a property-owner in an invitum proceeding, though he might be estopped in a proceeding against himself from denying such record.

5. ————: **Evidence: Conversation: Invited Error.** Where a party in the examination in chief of his witness brings out non-germane matter he cannot afterwards object to the further prosecution of the inquiry on cross-examination, since the error, if any, is invited.

6. **APPELLATE JURISDICTION: Constitutional Questions: Evidence.** Certain claims that the admission of evidence contradicting alleged records infringed the constitutional rights of a litigant are held not fairly to raise a constitutional question so as to deprive the Court of Appeals of its jurisdiction.

Appeal from Jackson Circuit Court.—*Hon. Henry L. McCune,* Judge.

AFFIRMED.

*Scarritt, Scarritt & Jones* for appellants.

(1)    The Supreme Court has exclusive jurisdiction in cases involving the construction of the Constitution of the United States or of this State.    Art. 6, sec. 12, Constitution of Missouri, and sec. 5 of amendments thereto adopted November, 1884.    State ex rel. v. Smith, 150 Mo. 75; Schuster v. Weiss, 39 Mo. App. 628; In Re Opening Essex Avenue, 44 Mo. App. 288; State ex rel. Dugan v. Kansas City Court of Appeals, 105 Mo. 299; State ex rel. v. Smith, 117 Mo. 69.    (2)    Upon the record presented to this court the judgment entry in this case is a nullity.    The motion for a new trial complained that the judgment of the court is contrary to law.    It was reversible error to overrule that motion.    R. S. 1899, sec. 691; Briggs v. Railroad, 111 Mo. 168; Bank v. Howell, 79 Mo. App. 389; Girdner v. Bryan, 94 Mo. App. 27, 31.    (3)    The action of the trial court violated appellants' rights under section 4 of article 2 of the Constitution of Missouri in that it deprived the plaintiff paving company of the gains of its own industry and the security thereof given by this government.    Bank v. Glenn, 10 Idaho 224, 77 Pac. 624; Bank v. Copeland, 18 Md. 302, 81 Am. Dec. 597; Hockman v. M'Clanahan, 87 Va. 39, 12 S. E. 230; Ball v. Flagg, 67 Mo. 481, 484; Harknis v. Forsyth, 11 Leigh 394; St. Louis v. Galt, 179 Mo. 8, 16.    (4)    The court erred in permitting Abercrombie, a defunct city official of Westport, to contradict by his parol evidence, the official records of that city made by himself.    Sweet v. Gibson, 123 Mich. 699; Cowley v. School Dist., 130 Mich. 634; Clendening v. Bank, 12 N. D. 51; State v. Stinebaker, 90 Mo. App. 280; Godfrey v. Phillips, 209 Ill. 584; Jamison v. Land Co., 77 S. W. (Tex.) 969; Trustees v. Fishback, 20 Ky. Law 1198; McCord v. Shaw, 27 So. (Miss.) 602; Ore Purchasing Co. v. Maker, 81 Pac. (Mont.) 13; State v.

Lumber Co., 85 Minn. 405; State v. Main, 69 Conn. 123. (5)    The court erred in refusing to grant plaintiffs' second instruction, to the effect that "if it is found from the evidence that the city engineer approved the specifications for this work, then it is immaterial whether he prepared the specifications or not."

*Cowherd & Ingraham* and *L. E. Durham* for respondent.

(1)    As to the constitutional question and jurisdiction see Woody v. Railroad, 173 Mo. 549; Hulett v. Railroad, 145 Mo. 35; Hilbert v. Barber Asphalt Paving Co., 173 Mo. 319.    (2)    Plaintiff has waived its right to trial by jury and cannot now complain.    Brown v. Bank, 5 Mo. App. 5; Cox & Slingsby v. Moss, 53 Mo. 435; Brown v. Railroad, 37 Mo. 298; Vaughn v. Scale, 30 Mo. 604; Briggs v. Railroad, 111 Mo. 175; Drainage Dist. v. Campbell, 154 Mo. 151; Railroad v. Townsite Co., 103 Mo. 470.    (3)    It was not error to allow Mr. Abercrombie or any other witness to testify as to the actual date when the specifications were filed.    Knopfi v. Roofing Co., 92 Mo. App. 294; Sedalia ex rel. v. Scott, 104 Mo. App. 595; Sedalia ex rel. v. Montgomery, 109 Mo. App. 197; St. Louis Gaslight Co. v. St. Louis, 11 Mo. App. 75; Reynolds v. Insurance Co., 88 Mo. App. 679; Perryman v. State, 8 Mo. 208; State ex rel. v. Aldridge, 66 Ohio St. 604; Johnson v. Railroad, 11 Ind. 280; Bartlett v. Boy, 34 Vt. 262.    (4)    It was not error for the court to refuse plaintiff's instruction declaring that an approval of the specifications by the city engineer relieved him of the duty of preparing them (1) because there is no evidence in the case to base it upon and (2) because the duty cannot be delgated; (3) because it is admitted that plaintiff itself prepared the specifications, and this is a fraud upon the property-owner which the engineer cannot cure by any approval or adoption.    Galbreath v. Newton, 30 Mo. App. 380;

Clapton v. Taylor, 49 Mo. App. 117; Boonville ex rel. v. Rodgers, — Mo. App. —; Independence v. Briggs, 58 Mo. App. 241; Wheeler v. Poplar Bluff, 149 Mo. 36; Kirksville v. Coleman, 113 Mo. App. 215; Desoto v. Showman, 100 Mo. App. 326; Forry v. Ridge, 56 Mo. App. 615; Bank v. Ridge, 62 Mo. App. 324; Gilfillan v. Eddy, 123 Mo. 546; Sedalia v. Donohue, 190 Mo. 407. (5) The meaning of section 5989 is clear. That it requires the resolution to describe the paving and that the specifications must be on file during the advertisement cannot be, and is not disputed, by appellant. The resolution referring to specifications and plans as on file when they were not on file, is fatal. Kirksville v. Coleman, 103 Mo. App. 215; Wheeler v. Poplar Bluff, 149 Mo. 36; Poplar Bluff v. Hoag, 62 Mo. App. 672; Kansas City v. Askew, 105 Mo. App. 87; Galbreath v. Newton, 30 Mo. App. 380. (6) For the advertisement to refer to plans and specifications as being on file, which was done here, when they were not in fact on file, is also fatal. R. S. 1899, sec. 5989; Louisiana v. Shaffner, 104 Mo. App. 101; Clapton v. Taylor, 49 Mo. App. 117; Desoto v. Showman, 100 Mo. App. 323. (7) The construction ordinance referred to plans and specifications as on file when in fact they were not on file. This, too, is fatal. Dickey v. Holmes, 109 Mo. App. 721; Galbreath v. Newton, supra; Kansas City v. Askew, 105 Mo. App. 87; Desoto v. Showman, 100 Mo. App. 329. (8) The judgment in this case should be affirmed because it is manifestly for the right party. (9) Plaintiff is estopped from complaining of the admissibility of the testimony about a conversation had between McGowan and Abercrombie, because plaintiff first introduced evidence about this conversation itself in rebuttal. Afterward, in surrebuttal it was perfectly proper for defendants to ask Abercrombie about this conversation.

JOHNSON, J.—Action to enforce the lien of a special taxbill issued by the city of Westport on November 9, 1897, in part payment of the work of paving McGee street between Thirty-first and Thirty-third streets. A jury being waived, the cause was submitted to the court, judgment was entered for defendants, and plaintiff appealed.

The taxbills of the series to which the one in controversy belongs were issued before the absorption of Westport by Kansas City and while it was a municipality of the fourth class operating under the provisions of an act providing for the government of cities of the fourth class passed by the Legislature in 1895. [Laws of 1895, p. 65, et seq.]     The taxbill was issued to plaintiff, the contractor who laid the pavement, is regular in its recitals and prima facie entitled its holder to a lien against the property described.     Its validity is attacked in the answer on a number of grounds, all of which relate to alleged irregularities in the proceedings leading to its issuance, but the evidence introduced removed from controversy all of these grounds except two which deal with acts relating to the preparation and filing of plans and specifications for the proposed improvement.

On July 9, 1897, the board of aldermen passed a resolution "declaring the work of paving McGee street from the south line of Thirty-first street or Springfield avenue to the north line of Thirty-third street to be necessary," and provided "the whole work to be done in conformity with the plans and specifications therefor on file in the office of the city engineer."     August 18th the board passed an ordinance authorizing the improvement which likewise referred to the plans and specifications as being then on file in the office of the city engineer.     That officer duly advertised for bids and in the published notice stated they would be opened at four o'clock p. m., Saturday, September 11th, and that "plans

and specifications may be seen and all information in regard to the work obtained at this office and at the office of the city clerk." This notice was published for two weeks preceding the date last mentioned. The contract was awarded to plaintiff as the lowest and best bidder and was signed by the parties on September 22d. Afterward the work was completed in compliance with its terms and the assessment was levied. Defendants introduced in evidence an ordinance in force at the time of these proceedings which created the office of city engineer and prescribed the duties of that officer, among them the following: "To prepare specifications for all street improvements and public work proposed and to prepare all ordinances relating to grades, to the opening or changing of streets, or alleys, or to street improvements, and to prepare all contracts for public work." Plans and specifications were introduced in evidence bearing the filing stamps of the engineer and clerk which show that the document was filed in the engineer's office on July 9th (the day of the passage of the resolution declaring the improvement necessary) and in the office of the clerk on September 3d. Defendants were permitted, over the objection of plaintiff, to show by parol evidence that the dates thus affixed falsely stated the facts. Their witnesses testified that the plans and specifications were prepared by plaintiff and kept in its office until September 9th, two days before the date set for the opening of bids, and then were brought by an agent of plaintiff to the engineer with the request that they be marked filed as of July 9th. The engineer, H. B. Abercrombie, was one of these witnesses. He testified that he took no part in preparing the plans and specifications, that they were brought to him by plaintiff's attorney on September 9th and that, after the contract was awarded, he marked them filed as of July 9th, at the request of one of plaintiff's representatives. He was supported in this testimony by that of

a clerk in his office, as well as by that of one of the aldermen. To meet this evidence, plaintiff introduced several witnesses, among them one of its chief agents at the time of the proceedings in question, who testified, in part, as follows:

"Q. What do you know of any conspiracy between you or any other agent of the plaintiff in this case, and the officers of the city of Westport in regard to withholding plans and specifications for this work from the files? A. No, sir; I never did. I had no reason nor such proposition was ever suggested or known to me, and I was agent of the Barber Asphalt Paving Company, having charge of that matter. We would not have bid for that work or any other work had not the specifications been on file the requisite length of time. Q. Were you acquainted with the city engineer and city clerk of Westport at that time? A. I knew them both very well. Mr. Abercrombie was the engineer and Mr. Love the city clerk. Q. Did you ever have a talk or conversation or understanding with either of these officers in regard to withholding plans and specifications from the files? A. No, sir, I never did. I had no reason nor motive for desiring any such condition and, in fact, I would not have bid on the work if I had not understood the plans and specifications had been duly made and filed. Q. What was the general custom in practice with reference to the making and filing of plans and specifications in the office of the city engineer and the city clerk of Westport for street paving work at the time referred to? A. It was that the plans and specifications should be made and filed about the time the improvement was inaugurated. Q. Was that custom varied from in the instance of the McGee street paving? A. It was not to my knowledge."

Further, for the purpose of weakening the credibility of the engineer, plaintiff introduced the following

128 App.—18

letter written by him on February 21, 1901, to plaintiff's general superintendent:

"Yours of Feb. 16th is received.

"Accept any thanks for your kindly interest in my welfare.    I am acting as deputy surveyor under Mr. Stalnaker and am in charge of the Independence office.

"In taking up the 'stone situation with Mr. Demarest,' if you go to the bottom you will find that the Barber Company have about $200,000.00 outstanding in Westport taxbills which (plaintiff's attorney) expects to collect with the assistance of my very bad memory, as to such facts as the filing of plans and specifications and whether you wrote your bids at so much per lineal foot for asphalt pavement, and other trifling incidents which some attorneys here seem to think are of vital importance.    (Plaintiff's attorney) is also enjoying the exclusive use of my private memorandum book in which are recorded all side information as to advertisements, lettings and actions of the Public Improvement committee, etc., etc.

"Now while my natural modesty prevents me from asking any reward for myself for such favors, it does not prevent me from feeling that your company should pay some attention to my wishes in such minor matters as 'crushed rock.'    My modesty would also prevent my asking for this favor if I thought for a moment that Adam Armstrong would ask a higher price or give less value in this service than Jim Halpin or anyone else with whom you have been dealing.

"I have taken this matter up quite early in the season so that Armstrong would have a chance to equip himself to do all your work promptly when the work opened up.

"My first interview with (plaintiff's agent) and his 'hot air' promise so barren of results, has made me feel that perhaps I was overrating my 'pull' with the Barber Company and has excited my curiosity as well, so that

now instead of asking a 'fair share' of your rock business for Adam Armstrong as I did in my first talk with (plaintiff's agent), I will say that unless Mr. Armstrong received a contract for *all* of your rock business for the coming year at Kansas City, I shall feel that the Barber Company has forgotten any favors that I may have done for them in the past and have no expectation of receiving any in the future.

"The only answer that I really care to receive to this rather lengthy and rambling note, I will expect to receive from Adam himself.

"Thanking you in advance for kind attention to such comparatively unimportant matters, I remain," etc.

The witness who produced this letter stated that plaintiff did not give Armstrong all of its "rock business" during the year mentioned, "but we purchased some stone from him, yes, sir."

In rebuttal, defendants recalled Mr. Abercrombie and interrogated him "in regard to this practice of dating back the filing marks on the papers in your office." The plaintiff objected, but the court permitted the witness to answer the questions. He said "I will state that it was a Sunday at Chief Hale's picnic, somewhere about a year previous to this when the Barber Company first started to improve streets in Westport, and he (plaintiff's agent) met me at Chief Hale's picnic, and he says 'I understand you and (plaintiff's attorney) are having some trouble about this work out here.' 'Well,' I said, 'it is not anything unreasonable,' and he went on to ask me what it was and I told him that (plaintiff's attorney) had objected to my putting the filing down on some papers when they were delivered there—that if I did that it was going to cause them a whole lot of trouble and bother." Further the witness said, "I didn't like the way they wanted to carry on this work in regard to the record and he (plaintiff's agent) says: 'What's it to you? What do you want out of this?' He says, 'Here,

these people want Barber Asphalt paving and we stand ready to do it, and you are only the machinery that is carrying on this thing.    Now, what have you at stake? Have you any money to lose about the time these dating stamps shall be made?'    He says, 'We employ very high priced attorneys to look after this work, and we have got to have it done according to their wishes and instructions;' and he says 'While you are city engineer there, just do as they want you to do and you will hold your job and draw your salary, and we will get along and have a good time, and our relations will be very good;' " etc.

No findings of fact were requested by either party or made by the court.    At the request of plaintiff, the court gave the following declaration of law:

(1)    "The court declares the law to be that if it is found that Abercrombie, city engineer of the city of Westport, in the discharge of his functions marked and certified that the specifications and plans for the work in question were filed as of a certain date, his testimony upon the stand, unsupported by other evidence, is insufficient to overcome his official acts as made a matter of record."

But the court refused plaintiff's request for the following declarations:

(2)    "The court declares the law to be that if it is found from the evidence that the city engineer approved the specifications for this work then it is immaterial whether he prepared the specifications or not."

(3)    "The court declares the law to be that the taxbill in evidence makes out a prima-facie case for the plaintiff, and that upon the pleadings and evidence the finding and judgment should be in favor of the plaintiff."

Evidently the judgment in favor of defendants was based on the finding that one or both of these facts had been established by defendants, *first*, that the engineer

had not prepared the plans and specifications in the sense required by the statute and ordinance and that such omission was fatal to the validity of the bill; or, *second,* that the plans and specifications were not on file at the time of the passage of the resolution declaring the work necessary, nor during the period covered by the publication of notice for bids and that such omission was fatal to a recovery. We shall determine the questions arising under each hypothesis, but first shall dispose of the contention of plaintiff that it was denied the benefit of a trial by jury.

This contention rests on the fact that the record fails to show in express terms that a jury was waived by the parties. The record does show the following entry: "And on June 23, 1906, being the sixty-fourth day of the April, 1906, term of said court, now come again said parties and this cause having been heretofore submitted to the court and by the court taken under advisement and the court now being fully advised in the premises finds the issues in favor of the defendants." Nowhere does it appear that plaintiff demanded a jury or objected to its absence; no motion in arrest of judgment was filed and, in the twenty-three assignments of error appearing in the motion for new trial, no claim is made that plaintiff was deprived of the right now asserted for the first time.

It has been the unvarying policy of the law to guard with zealous care the right to trial by jury and to regard with suspicion even the slightest encroachment on the enjoyment of that right. And, if it appeared in the record before us that the learned trial judge had attempted to clothe himself with powers and duties belonging exclusively to a jury, without the consent of both parties, we would set aside the judgment as the result of a proceeding *coram non judice.* But that parties may waive a jury and submit the issues of fact to the judge is too well settled to require discussion or the

citation of authorities. The only decisive question we are called upon to settle is whether on the face of the record it sufficiently appears that a jury was waived. Directly in point is the case of Bruner v. Marcum, 50 Mo. 405, where, as in the present case, the record did not contain an express recital that a jury had been waived by consent of parties, but the entry of judgment showed that the parties "appeared and submitted the cause for trial to the court." Afterward, and over the objection of the defeated party, the trial court made a *nunc pro tunc* entry showing in so many words that a jury trial had been waived. The Supreme Court said: "In the first place, there was no necessity for any amendment at all, for the original entry can receive no other construction than that a jury trial had been waived. It shows that the parties appeared and submitted the case for trial to the court. How could such a submission be made without waiving the right to a jury trial?" The submission being by consent of the parties was a waiver of the right to demand a jury. The failure of plaintiff to demand a jury and the voluntary submission of the cause to the court were sufficient to constitute a waiver." [Drainage District v. Campbell, 154 Mo. 151; Railroad v. Randolph Townsite Co., 103 Mo. 451; Bank of Monett v. Howell, 79 Mo. App. 318; Briggs v. Railroad, 111 Mo. 168.] Following this rule, it is not necessary to determine whether or not the point was waived by the failure of plaintiff to preserve it by motion in arrest. The judgment entry must be construed as showing that a jury was waived by consent.

Addressing ourselves now to the question of the effect on the validity of the taxbill, of the fact, evidently found by the trial court, that the engineer did not prepare the specifications but accepted and marked filed those prepared in toto by plaintiff, we entertain the opinion that this fact was fatal to the legality of the proceedings and to the validity of the assessment. The

extract we have quoted from the ordinances of the city made it the duty of the engineer to prepare specifications for all street improvements and public work proposed. Section 5989, Revised Statutes 1899, provides that "such contracts shall be let to the lowest and best bidder upon plans and specifications filed therefor by the city engineer or other officer designated by the board of aldermen, with the city clerk, not less than one week's advertisement for bids thereupon being made in some newspaper published in the city." The ordinance being consistent with the statute must be given the same effect as though its provisions were a part of the statute, and thus regarded, there can be no doubt that a substantial performance by the engineer of the imposed duty was made an act jurisdictional to the right of the municipality to levy the assessment. In Jaicks v. Merrill, 201 Mo. 100, in considering a charter provision requiring special taxbills to be made out and signed by the president of the board of public works or in his name, or any person specially authorized by the board in writing to do so, the Supreme Court held: "A reasonable construction of the charter, we think, does not require the president of the board of public works with his own hand to do all the clerical work of making out these special taxbills; but when they are issued, as these were, by the authority of the board of public works and signed by its president by the party specially authorized by the resolution of the board, all the substantial requirements of the charter were complied with."

To the same effect was the ruling in Dickey v. Porter, 203 Mo. 1; 101 S. W. l. c. 594, but on examination, the opinions in these cases will be found to be in harmony with the rule that a public officer cannot delegate to others the performance of the duties of his office, and, in cases of the character of the one before us, it would seem to be too plain for argument that the property owners against whose property the assessment is pro-

posed to be levied, contractors, who should be given, a fair opportunity to bid on the work, and the general public, all have the right to receive the benefit of the skill, judgment and industry of the constituted public officers in the discharge of the prescribed duties of their respective offices.   Reasonably interpreted, the law did not require the engineer to perform the manual or clerical labor necessary to the preparation of the plans and specifications.   Such work might have been performed legally by assistants in his office, under his supervision. What the law expected of him was that he would apply his professional skill and judgment to the work and certainly it will not tolerate the suggestion   that   he could perform his duty by accepting plans and specifications made and presented by one of the bidders.   Thus to bestow on a favored bidder an advantage which might enable him to make the way easy for himself and hard for his competitors, by its tendency to destroy competition, would be entirely incompatible with fair play and with the security of private property.   This reason, of itself, should make the act unlawful, but we hold against its validity on the ground that the engineer could not delegate the performance of a duty so important to a private person, whether or not such person was interested in the proposed improvement as a prospective bidder, or otherwise.    [Rich Hill v. Donnan, 82 Mo. App. 386, 388; Galbreath v. Newton, 30 Mo. App. 380; Clapton v. Taylor, 49 Mo. App. 117; Bevier v. Watson, 113 Mo. App. 506, 512; City to use v. Eddy, 123 Mo. 546; Sedalia to use v. Donohue, 190 Mo. 407; Independence v. Briggs, 58 Mo. App. 241; Wheeler v. Poplar Bluff, 149 Mo. 36.]

But had the engineer done this work in the manner contemplated by the charter and ordinances, the fact that the plans and specifications were not lodged in his office or in that of the city clerk until two days before bids were opened infected the proceeding with a juris-

dictional infirmity.    The resolution declaratory of the
necessity of the improvement passed by the board of al-
dermen and officially published was for the informa-
tion and benefit of owners whose property it was pro-
posed to burden.    They were notified that plans and
specifications then were on file in the engineer's office
containing information relative to the character and
details of the improvement which they might consult
in deciding whether they desired to approve or oppose
it.    As the resolution itself did not contain this infor-
mation, it is obvious that property owners were left
without means of acquiring it from any authentic and
indisputable source.    We observed in the city of Kirks-
ville v. Coleman, 103 Mo. App. 215, that "one of the
principal objects of such resolution is that, by its pub-
lication, the property owners affected may be advised
of what is contemplated so that they may have an op-
portunity to arrest the proceedings by a majority pro-
test against it.    Manifestly, when the improvement is
such that it may be done in various ways or be com-
posed of one of many kinds of material, substantially
affecting the quality or cost of the work, the council
should state in such resolution in what manner it is
proposed to improve the street."    [Wheeler v. Poplar
Bluff, supra; Poplar Bluff v. Hoag, 62 Mo. App. 672;
Kansas City v. Askew, 105 Mo. App. 84, 87; Galbreath
v. Newton, supra.]    The purpose of the resolution may
be served by a reference therein to plans and specifica-
tions on file, but where this method is followed and the
plans and specifications are not placed on file in the des-
ignated office, the purpose is defeated and subsequent
proceedings should be held invalid for lack of jurisdic-
tion.

But it is argued by plaintiff that the fact under dis-
cussion should not be construed as one supported by
proof for the reasons, first, that the verity of the filing
stamped by the engineer on the instrument cannot be

attacked by extrinsic evidence, and, second, that if such evidence were admissible, the engineer was estopped from impeaching his own official act.    Neither charter nor ordinance made it the duty of the engineer to endorse the date of filing on the plans and specifications. A paper or document is said to be filed when it is delivered to the proper officer and lodged by him in his office.    At common law, a file meant a thread, string, or wire upon which writs and other exhibits of courts and officers were fastened or "filed for the more safe keeping and right turning of same."    [Dawson v. Cross, 88 Mo. App. 292.]    As the stamp affixed to the instrument by the engineer was nothing more than his own private mark designed as a memorandum by which he could refresh his recollection, we might dispose of the question by saying that at best it was only prima-facie evidence of the truth of the fact it purported to state, but we will add that had the law required the date of filing to be endorsed, the date affixed should not be construed as conclusive evidence of the actual fact.    In proceedings where the powers of sovereignty are employed to divest the citizen of his private property for public uses or to levy assessments against his property, with or without his consent, to pay for public improvements, the principle is well settled, and is most fair and just, that he should be permitted to defend his property against unwarranted and unlawful assaults made under the guise of law by showing that jurisdictional conditions, the performance of which by law are made prerequisite to his divestiture, in fact, have not been met.    He may dispute the record of the council where it has not been made conclusive by statute.    [City of Sedalia v. Scott, 104 Mo. App. 595, l. c. 607; Knopfi v. Paving Co., 92 Mo. App. 279.]    In the latter case we said, "although the record may recite the things necessary to confer jurisdiction, yet the property owner may dispute it and show the fact to defeat jurisdiction.    In other words, the

tribunal is bound by its record whether true or false; while the property owner is only bound when it recites, truthfully, those things necessary to give jurisdiction. Thus in this case, the record showing on its face that jurisdiction was withdrawn from the council, we held its subsequent action void, even though it should be conceded that there were facts outside the record which would have conferred jurisdiction. And yet if the record had recited those things necessary to continue jurisdiction with the council, the plaintiff would have been at liberty to show it was a false recital and that jurisdiction was in fact withdrawn." If this be true as to the records of the council, *a fortiori* must it be true as to the record of a ministerial act performed by a ministerial officer. We think it was competent for defendants to show the falsity of the filing marks by extrinsic evidence.

In answer to the contention that the engineer should be held estopped on grounds of public policy from disputing the verity of his own official act, we are of opinion the point would be well taken were the engineer a party to this action. But in an action in which he has no interest and especially one where a property owner is attacking the validity of an *in invitum* proceeding, we know of no sound reason for disqualifying him as a witness. Each party has cited us to many cases but we shall content ourselves with a reference to one of them. In Goodrich v. Senate, 42 Atl. 409, decided by the Supreme Judicial court of Maine, it was held that a sheriff was a competent witness to show that the record made by him of the facts relating to the incarceration of a prisoner did not truly state the facts. Point was made that "the entry upon the calendar is an official record, which cannot be contradicted or varied by parol evidence and is conclusive." In sustaining the admission of the testimony of the sheriff, the court said: "Records of judicial tribunals, as to parties af-

fected, are conclusive as to all matters contained therein, of which the law requires a record. If erroneous, they may be corrected by the court, or the proper officer under its order, but until so amended, they are treated as verities, and cannot be contradicted or varied by parol testimony. But there is another class of entries, sometimes called 'records,' which are of a public nature, and required by law to be kept by various non-judicial officers, which are of a less solemn character, and are not accorded the conclusiveness attaching to judgments of courts of record. They are competent evidence of the facts recorded, and required by law to be recorded, but not conclusive. . . . They are all prima-facie evidence of the facts stated, of which the law required a record, but only that."

Evidently, from the declaration of law given at the instance of plaintiff, the learned trial judge gave little, if any, heed to the testimony of this witness, who stands in the unenviable position of having betrayed a public trust and of attempting extortion. But the testimony was admissible for what it was worth and no error was committed in receiving it.

Point is made that the engineer should not have been permitted to testify to the conversation with plaintiff's agent which tended to show the existence of a conspiracy between plaintiff and the engineer to falsify records relating to official acts of the latter. The facts we have stated show that plaintiff first raised that issue in the direct examination of its witness McGowan and, therefore, it cannot be heard to complain that the subject of such conspiracy, in fact, was not germane to the issues presented by the pleadings. The error, if any, having been invited by plaintiff, should not now be considered.

These considerations compel the conclusion that the taxbill in suit is void and should not be enforced as a lien against the property sought to be charged.

In the motion for a new trial, plaintiff, for the first time, endeavored to inject constitutional questions into the case and, afterward, filed in this court a motion to transfer it to the Supreme Court on the grounds assigned in the motion for new trial and on the additional ground that a constitutional right had been invaded by the denial of a trial by jury. In substance, the claim advanced is that in admitting parol evidence to show the falsity of the filing mark made by the engineer of the plans and specifications, plaintiff was "deprived of the gains of its own industry and the security thereof given by this government, contrary to the provisions of section 4, article II, of the Constitution of Missouri," and that in construing section 5989, Revised Statutes 1899, to require the engineer to prepare the plans and specifications for public work and not merely to approve those prepared by a bidder, the same constitutional guaranty was violated. And, further, it is asserted that each of these acts of the court was in violation of the provisions of section 10, article II of the Constitution of Missouri, and of section 1, article XIV of the Amendments to the Constitution of the United States.

It is obvious that no constitutional question is fairly presented by the record. [Woody v. Railroad, 173 Mo. 547, 549; Hulett v. Railroad, 145 Mo. 35; Hilgert v. Barber Asphalt Paving Co., 173 Mo. 319; Kansas City v. Baird, 163 Mo. 196.] To hold that a decision of a circuit court pertaining merely to a rule of evidence or of practice or of procedure should afford to the defeated party an opportunity to raise constitutional questions and thereby to divert jurisdiction over the appeal from this court to the Supreme Court necessarily would be to say that the jurisdiction of this court is not fixed by law, but depends in each instance on the whim or caprice of counsel for the defeated litigant, since no case could be imagined wherein an adverse ruling on a question of evidence or practice might not be urged as an

invasion of constitutional right. . This case is not one where we must consider the merits of fairly raised constitutional questions in order to overrule the motion to transfer but, as stated, is one in which no such question is fairly presented.

The motion to transfer to the Supreme Court is overruled and the judgment is affirmed.    All concur.