BEATRICE A. MURPHY, RESPONDENT, v. BURLINGTON OVERALL COM-PANY, EMPLOYER, MARYLAND CASUALTY COMPANY, APPELLANT.*— 34 S. W. (2d) 1035.

Kansas City Court of Appeals. January 26, 1931.

*R. A. Kope* for respondent.

*James D. Reeves* for appellant.

BLAND, J.—This is an action under the Workmen's Compensation Act. Claimant was injured on December 2, 1927, by an accident arising out of and in the course of her employment with the defendant, Burlington Overall Company. A claim for compensation was filed with the commission on December 4, 1928. On December 15 of that year the employer, through its insurer, Maryland Casualty Company, filed its answer to the claim setting up as its defense that the action was barred by the Statute of Limitations. The claim was heard by the commission and a final award was made in favor of claimant

"for medical aid by Dr. Barney" in the sum of $100 and permanent partial disability in the sum of $20 per week for 34.8 weeks or a total award of $696. From this award the employer and the insurer appealed to the circuit court of Jackson county, where the award of the commission was affirmed. The employer and the insurer again have appealed.

The facts show that claimant was employed by the Burlington Overall Company in Kansas City, Missouri, as a forelady; that she was injured by falling over a kit of tools left in the aisle by a repairman and thereby sustained injuries to her right arm and shoulder. The employer, through its foreman, received immediate notice of the accident and on December 12, 1927, reported the same and the injuries received by claimant to the Compensation Commission. Claimant returned to work for her employer on December 6, 1927, and continued to perform her work as forelady, at the same wage that she had been receiving, until September 15, 1928. Her employer required of her that she take over the operation of a sewing machine and on account of her injuries she was unable to do so and quit her employment on the last mentioned date. On the day of the accident claimant went voluntarily for medical treatment to Dr. L. F. Barney, whom she had known for a number of years.

The commission found in its "statement of facts" that claimant remained under the care of Dr. Barney until March, 1928; that she was requested by the insurer to go to Dr. Kuhn for an examination and, later, about April 1, 1928, she was requested to go to Dr. Rickter and was under the care of the latter for about six weeks; that after that "she was under Dr. Barney's care for sometime." The commission further found that "Dr. Kuhn and Dr. Rickter were paid on June 1, 1928, by the insurer for the services they rendered to the employee." . . . "On October 13, 1928, the employee came to 'the office of the commission in Kansas City and had a conference with a member of the commission' with reference to her compensation and on November 13, 1928, the commission received a letter from R. A. Kope, attorney for enployee regarding employee's compensation."

The evidence also shows that claimant called at the office of the commission on October 26, 1928. On her visit on October 13, claimant and her husband were in the Kansas City office of the commission and asked one of the commissioners to "investigate this case and let them know." What transpired when she was in the office of the commission on October 26, is not shown in the evidence. The record does recite that "on December 4, 1928, the commissioner received her claim for compensation." There is no evidence of the writing of any letter by R. A. Kope, attorney for the employee, regarding her compensation, as recited in the statement of facts made by the commission. The statement of facts, itself, does not disclose

the contents of this letter or whether it was sufficient to constitute the filing of a claim within the meaning of section 39 of the Compensation Act· (see Laws 1927, p. 511).

In its "Rulings of Law" the commission stated:

"It would seem from the wording of this section (section 13) that medical aid is part of compensation as well as two-thirds of the employee's wages, and the payment for medical extended the time for filing claim for compensation.

"On October 13, 1928, when the employee came to the Kansas City office and informed this commission the condition of her arm resulting from the accident, she gave all information required by statute and clearly indicated that she wanted compensation.

"Claim for compensation was filed within six months limit, as required in section 39."

Appellants insist that the claim for compensation was not· filed within six months after the date of the injury as required by section 39 of the act, which provides, in part, as follows:

"No proceeding for compensation under this act shall be maintained unless a claim therefor be filed with the commission within six months after the injury or· death, or in case payments have been made on account of the injury or death, within six months from the date of the last payment."

In this connection appellants say that "medical aid," as provided by section 13, is not compensation, therefore, that part of section 39 which provides that a claim may be filed within six months "from the date of the last payment" has no application to the facts in this case; that even if medical aid were compensation, within the meaning of the act, the claim was not filed within six months after the payment of the bill of Drs. Kuhn and Rickter, as those payments were made on June 1, 1928, and the claim was not filed until December 4 of that year.

The undisputed evidence shows that the claim was not filed until December 4 and that the last payment to the doctors was made on June 1, so the commission could not have decided this case upon the theory that the payments to the doctors were made within six months of the time of the filing of the claim on December 4. It seems that the commission based its conclusions that the claim was filed within the six months limitation period, as provided by section 39 of the act, upon the fact that although Drs. Kuhn and Rickter were paid on June 1 that they were paid within six months prior to the filing of the claim, as the latter was, in legal effect, filed on October 13, 1928, when the claimant was in the office of the commission informing it of the "condition of her arm resulting from the accident" and giving "all information required by statute and clearly indicated that she wanted compensation."

Section 41 of the act provides that the commission shall make a statement of findings of fact and rulings of law. There was no substantial compliance with the statute on the part of the commission in this respect. There is no findings of fact to support the conclusion of law announced by the commission to the effect that claimant, when in the office of the commission on October 13, 1928, gave the commission "all information required by the statute and clearly indicated that she wanted compensation," nor, in fact, is there any evidence in the record tending to show what transpired in the office of the commission at the time in question, except that one of the commissioners was requested to investigate the case and let claimant and her husband know.

It is well settled that conclusions of law announced by the commission must be supported by findings of fact. [Inland Steel Co. v. Lambert, 118 N. E. 162, 163.] It has been held that where there has been no findings of fact, if the facts are undisputed, the court will treat the undisputed testimony as a findings of fact. [Prouse v. Industrial Com. of Colo., 69 Colo. 382.] But, as before stated, there is no fact in the record tending to show what transpired in the office of the commission on October 13, 1928, when claimant was there, except that the commissioner to whom she and her husband talked, was asked to investigate the case and "let them know." However, even if claimant had proceeded as stated in the "Rulings of Law" of the commission and gave it all information required by statute and indicated that she wanted compensation, unless she made, at the time, a claim in writing, her action was not sufficient to meet the requirements of section 39 of the act, which provides that the claim shall be "filed" with the commission within six months after the injury. There is no such thing as a verbal filing of a claim.

"The word 'file' has a well understood meaning, as well as legal significance, and inasmuch as it is impossible to file an oral demand, the words of the statute, its purpose and intent and the object to be accomplished by it cannot be met except by a written statement of the claim. The lexicographers derive the word 'file' from the Latin 'Filum,' a thread; and its application seems to be drawn from the ancient practice of placing papers upon a thread or file for ready reference. Webster says 'to file' means to lay away papers for presentation and reference. Bouvier says a paper is said to be filed when it is delivered to the proper officer." [Thompson v. Southern Express Co., 61 S. E. 182, 183.]

In Dawson v. Cross, 88 Mo. App. 292, 299, the court said, "a paper is said to be filed when delivered to the proper officer and received by him to be kept on file." [See, also, Paving Co. v. O'Brien, 128 Mo. App. 267, 282; Baker v. Henry, 63 Mo. 517.]

Claimant cites the case of Knoll v. City of Salina, 98 Kan. 428, in support of her contention that a claim may be filed verbally.

However, the Kansas Act which was construed by the court in that case is unlike section 39 of our statute, as the Kansas Act does not use the word "file" but provides that there shall be no recovery for compensation "unless a claim for compensation *has been made* within three months after the accident," etc. (italics ours). [See Gailey v. Mfg. Co., 98 Kan. 53, 55.] Under the Kansas limitation statute a verbal claim is permissible, but it is quite apparent that that statute is not like ours.

Claimant insists that owing to the fact that Dr. Barney treated her until January, 1929, the compensation owed him for his services should be construed as "payment" within the meaning of section 39 of the act. In this connection claimant insists that Dr. Barney was "the doctor employer sent employee to for treatment." There is no evidence that any one sent claimant to Dr. Barney for treatment, but the evidence of claimant, herself, shows that after she was injured she told her foreman she was going to see Dr. Barney and the foreman made no objection. There is evidence in the record that, prior to the time that she was sent by her employer and the insurer to see Drs. Kuhn and Ruckter, insurer wrote several letters to Dr. Barney requesting a final report and his bill, and it may be fairly assumed from the record that until the time the employer and the insurer furnished medical aid to the claimant they were willing to have such aid furnished by Dr. Barney. Claimant testified that about the last of March, 1928, an agent of the insurer told her "We want you to go to our doctor." Claimant replied, "I am doctoring with Dr. Barney." The agent then said, "I know, but we want you to go to our doctor." Claimant then said, "all right." She testified that she went to the doctors furnished by the insurer and was treated by them. The evidence shows that she also continued to see Dr. Barney after being treated by the other doctors; that she asked an officer of her employer about the payment of Dr. Barney's bill, and he replied that the bill would be paid by the insurer. Later he told her that the insurer thought that the doctor's bill was "too much;" that these conversations were during the week when she quit her employment.

Relative to her claim having been filed in proper time, the commission gave no consideration to the employment of Dr. Barney, and in this the commission was right. There is no evidence that either the employer or the insurer engaged the services of Dr. Barney or assumed the payment of his bill for any period after medical aid was furnished by the insurer and, even were there such evidence, as no payment was ever made to Dr. Barney for his services, the provisions of section 39 relative to payments for compensation, have no application. Therefore, it is unnecessary for us to decide whether payments for medical aid are payments of the kind mentioned in section 39 of the act.

Whether the letter of claimant's attorney was such as constituted a filing of a claim within the meaning of the act, there is no evidence tending to show, nor does the statement of facts, made by the commission, shed any light upon this question. In her brief claimant says that this letter gave written notice of the accident and requested a claim blank. If this be true then it did not constitute the filing of a claim. In view of the statement of claimant, as to the nature of the letter, it would be useless to send the case back to the commission to hear further testimony and for a further findings of fact relative to the matter.

However, claimant insists that the payment of her salary by her employer is equivalent to paying compensation. In this connection claimant points out that full salary was paid her from the date of the accident until September 15, 1928, and, as December 4 was within six months of the last mentioned date, that the claim was filed within the time allowed by statute or "within six months from the date of the last payment." There is no merit in this contention. Claimant performed all of her duties as forelady during the time that she received the salary in question. What she received was paid her salary for such services and in no sense was compensation for her injury. Therefore, what she received was not payments in the way of compensation. [Elkins v. Library Ass'n, 82 Pa. Sup. Ct. 144; Stein v. Packard Motor Co., 219 Mich. 374, 380; O'esau v. Bliss Co., 177 N. Y. S. 203.]

We have examined the case of Gailey v. Mfg. Co., supra, cited by claimant and find it not in point. In that case the employee returned to work within two weeks after the accident but did only light work which he was able to perform with one hand and so worked for about five months. During this time, although the employee was only partially able to perform his regular duties, the employer paid him his regular wages. In the Kansas case the court treated the payment of his wages as compensation. The facts in that case and the ones in the case at bar are totally dissimilar. In any event, if the wages paid claimant are to be treated as compensation then she has been paid more than the commission found she was entitled to in the way of compensation. [See section 14 (a) of the act.]

It is quite apparent that there is no theory upon which it may be held that the claim was filed within the limitation period. Compliance with the statute in this respect is jurisdictional. [Schrabauer v. Engraving Product, Inc., 25 S. W. (2d) 529.] Claimant filed her claim too late and compensation should have been denied. It is unfortunate that the ruling must be so in view of the circumstances surrounding this case but the statute allows no alternative.

The judgment is reversed. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.