HAZEL McENENY, Appellant, v. S. S. KRESGE COMPANY and ZURICH INSURANCE COMPANY (ZURICH GENERAL ACCIDENT & LIABILITY INSURANCE COMPANY).—62 S. W. (2d) 1067.

Division One, August 24, 1933.

818

*E. P. McCarthy* for appellant.

*H. J. Fitzpatrick* and *Allen, Moser & Marsalek* for respondents.

. FERGUSON, C.—The appellant, Hazel McEneny, an employee of a S. S. Kresge Company store in the city of St. Louis, was injured, while so employed, on March 16, 1929, by falling "down the steps" of a stairway leading from the basement to the first floor of the store building. Her claim for compensation under the Workmen's Compensation Act, for the injuries sustained, was not filed with the commission until May 28, 1930. The Zurich Insurance Company is insurer. On June 24, 1930, the claim was heard by a referee who made a finding and award against the claim "for the reason that the employee failed to comply with Section 39, Workmen's Compensation Act (Sec. 3337, R. S. 1929) in that she failed to file her claim within six months from the date of last payment on account of compensation." Upon review by the commission the award of the referee was affirmed, whereupon the claimant appealed to the circuit court. From a judgment of the circuit court affirming the award claimant appealed. The appeal being within the jurisdiction of the St. Louis Court of Appeals that court in an opinion, in which all the judges of the court concurred, reversed the judgment and remanded the cause to the circuit court with directions (Mo. App.), 53 S. W. (2d) 1075, but deeming their decision in conflict with that of the Kansas City Court of Appeals in Murphy v. Burlington Overall Company, 225 Mo. App. 866, 34 S. W. (2d) 1035, certified and transferred the case here under the provisions of Section 6, Amendment of 1884 to

Article 6 of our Constitution. It thus becomes our duty as required by said section of the Constitution to "determine said cause . . . as in case of jurisdiction obtained by ordinary appellate process."

The employer was a major employer. The testimony is not, at times, clear as to dates and the chronological course of events but we think it sufficiently shows that at the time of the accident on March 16, 1929, the employer summoned a Dr. Sims to attend the injured employee. Dr. Sims treated her at her home for about a week. She then called a Dr. Hirst who, she states, treated her, at that time, for about a week. For approximately the next four weeks she was attended by a Dr. Diehr during which time she was "in bed all the time." It does not clearly appear at whose instance Dr. Diehr was called but, as the writer understands, the charges for these treatments by Dr. Diehr, the last of which was of date May 3, 1929, were assumed and paid by the insurance company. However, that perhaps, has no direct bearing upon the facts which must ultimately determine the question here involved. It seems claimant then turned to another physician, of her own choosing, a Dr. O'Connor who treated her for "five or six weeks" and thereafter "occasionally." During all this time claimant was unable, on account of the injury sustained, to return to work. In August, 1929, she returned to the store and "worked one week," then was unable to work again until sometime in October, 1929, when she resumed part time work and continued "until after Christmas." The employer paid her wages in full for about four months from the date of the injury March 16, 1929, until "sometime in July" 1929, but after that she was paid only for the time she "actually worked." On January 4, 1930, though no claim for compensation had been filed with the commission, a conference was held at the office of the Workmen's Compensation Commission, in St. Louis, which was attended by the injured employee and her attorney, a Mr. Fitzpatrick, representing the insurance company and a Mr. Williams who it seems was a representative of the commission. Compensation under the Workmen's Compensation Act was then and there discussed and a written statement, prepared by the employer, showing amounts theretofore paid by the employer was shown Mr. Williams who suggested that the parties endeavor to adjust the matter by agreement. Fitzpatrick, the representative of the insurance company, requested that claimant submit to an examination by Dr. Diehr and Dr. Deppe. The examination was made, at the expense of the insurance company, but no treatments of any kind were either made or prescribed, at that time, by either doctor, nor does it appear that either then or later any direct, definite or final agreement was had between the parties as to payment of further or other compensation by the employer or the insurance company. However, as we understand the record, it seems that Dr. Hirst sometime in January, 1930, resumed the treatment of claimant which treatment continued at in-

tervals to the date of the hearing before the referee on June 24, 1930. At this hearing the attorney for claimant offered the testimony of Dr. Hirst for the purpose, as he stated, of showing "that the insurance company, sometime in January, 1930, undertook to pay this claimant's doctor bill." The testimony of Dr. Hirst concerning the matter apparently is referable to that time, i. e., "sometime in January, 1930." Dr. Hirst testified:

"Mr. Fitzpatrick came to my office after I started treating Mrs. McEneny, about two weeks, and he came up and wanted to find out about how many treatments it would take to enable her to go back to work and he said then the company would settle."

By the referee: "Q. But they (apparently referring to insurance company) didn't pay you money? A. No."

Attorney for claimant: "Q. Did you give her treatments pursuant to that? A. Yes.

"Q. Until when? A. I treated her—I treat her now about once a week.

"Q. What does the charge to Mr. Fitzpatrick amount to? A. The bill to the present date is $74.00.

"Q. What part of that would, under Mr. Fitzpatrick's instructions, be chargeable to his company? A. Sixty dollars."

Referee: "You will have to show that Fitzpatrick paid that."

Attorney for claimant addressing referee: "You don't say if they agreed to pay it that an actual payment is necessary."

Referee: "The law says six months from the date of the last payment. It doesn't say from the last authorization."

The claimant testified concerning the last course of treatment by Dr. Hirst as follows:

"Q. Are you still under treatment? A. I am.

"Q. From whom? A. Dr. Hirst.

"Q. How long has Dr. Hirst been treating you at this time? A. I don't remember the exact date. It was about two weeks after I was examined by Dr. Diehr and Dr. Deppe.

"Q. And that was in the latter part of January? A. That is what I think.

"Q. Has that treatment been continued since that time? A. Continued for awhile every day and then every other day and now it is once a week.

"Q. Do you know whether or not any arrangement was made by the insurance company to employ Dr. Hirst or to agree to pay part of his charge? A. The only thing I know is Mr. Fitzpatrick went to him and spoke to him and I am not sure what was said but I thought he would pay for some of the visits, twenty or thirty visits.

"Q. That was your understanding? A. Yes."

The statute here involved (Sec. 3337, R. S. 1929) provides: "No proceedings for compensation . . . shall be maintained un-

less a claim therefor be filed with the commission within six months after the injury or death, or in case payments have been made on account of the injury or death, within six months from the date of the last payment." The claim was not filed within six months after the injury but the award made by referee, and affirmed by the commission and the circuit court, denying compensation was in effect a holding that the commission was without jurisdiction "for the reason that the employee failed . . . to file her claim within six months from the date of last payment on account of compensation." It was not based upon a finding that the medical service rendered by Dr. Hirst beginning the last time in January, 1930, and within six months before the filing of the claim with the commission on May 28, 1930, was not rendered at the instance of the employer or the insurance company or that they did not assume and agree to pay the charges therefor but solely upon the ground that in the absence of a showing that such charges were actually paid by the employer or insurer within six months before the date of the filing of the claim the limitation of the statute was not tolled.

It will be noted that the employer paid full wages to the claimant for a period of approximately four months following the injury, continuing until sometime in July, 1929, during which time claimant because of the injury was unable to work and performed no services for the employer. These payments must properly be treated and considered as having been made "on account of the injury" within the meaning of Section 3337, supra. In this connection the opinion of the Court of Appeals discusses and correctly rules a contention, which it is therein stated claimant makes, that the conference held in the office of the commission in St. Louis on January 4, 1930, and hereinbefore described, met the essential requirements of the statute and was tantamount to the filing of a claim "within six months from the date" of the payments so continued until sometime in July, 1929, and thereby a claim was timely filed. We adopt and approve the holding of the Court of Appeals on such contention, as follows:

"It is the theory of the claimant, however, that because the matter was discussed at a meeting held in the St. Louis office of the Workmen's Compensation Commission relating to the claim of the claimant, it had the effect of the filing of a claim before the commission. The statute, however, provides that a claim shall be filed, and does not admit of the presentation merely of an oral statement. Such a statement cannot constitute the filing of a claim within the meaning of the statute. [Murphy v. Burlington Overall Co., 225 Mo. App. 866, 34 S. W. (2d) l. c. 1037.] The statute undoubtedly contemplates that some formal written document setting out the facts of the injury or death complained of shall be lodged with the commission.

"We think there can be no doubt that the claim was filed too late unless intervening matters tolled the statute."

█ But the real controversy arising upon the record and that here presented is whether the agreement by the insurance company in January, 1930, to pay the charges of Dr. Hirst for the course of treatments which had been resumed during that month and his treatment thereafter of claimant, charging same to the account of the insurance company, pursuant to such agreement, is to be construed as a payment "on account of the injury" within the meaning of that term as used in Section 3337, supra, so as to toll the limitation therein made. The respondents, the employer and insurance company, take the position that since there is no evidence that these charges for medical services had actually been paid the rendition of such medical services, though pursuant to the agreement of the insurance company in January, 1930, authorizing and agreeing to pay for same, cannot be treated and considered as a payment "made on account of the injury" which would toll the statutory limitation.

Section 13 of the Workmen's Compensation Act (Sec. 3311, R. S. 1929) provides for medical treatment "in addition to all other compensation" allowed by the act to an employee on account of an injury "arising out of and in the course of his employment." That part of said section, which is pertinent here, reads:

"In addition to all other compensation, the employee shall receive and the employer shall provide such medical, surgical, and hospital treatment, including nursing, ambulance and medicines, as may reasonably be required for the first sixty days after the injury or disability, to cure and relieve from the effects of the injury, not exceeding in amount the sum of two hundred and fifty dollars, and thereafter such additional similar treatment within one year from the date of the injury as the commission by special order may determine to be necessary."

The foregoing section was repealed and re-enacted in 1931, certain changes being made, see Laws 1931, page 381, but was in force and effect as set out above at the time of the injury which is the basis of this claim and the filing and hearing of the claim. Merely by way of comment we note that the new and present section, bearing the same number, 3311, employs the same language except medical treatment for the first ninety days after the injury or disability is provided for instead of the first sixty days and in an amount not exceeding seven hundred and fifty dollars instead of two hundred and fifty dollars while the limitation, to one year from the date of the injury, of such additional similar treatment as the commission by special order may determine to be necessary is removed. It is true the medical treatments resumed with Dr. Hirst in January, 1930, and continued for sometime thereafter were not rendered during the first sixty days after the injury but if the injury was such that thereafter further treatment was reasonably required and necessary the commission, by special order, could allow additional treatment during

a period limited however to one year from the date of the injury at the expense or cost of the employer. Thus, under the statute, then in effect, the injured employee was entitled to such medical treatment as the commission might determine was reasonably required, for a period of one year from the date of the injury. By the course of conduct pursued in this instance we think the insurance company and the employer waived the issuance of any prior order of the commission covering additional treatment after the sixty-day period, and, within a year from the date of injury, recognizing the necessity for further and additional treatment on account of the injury, authorized, provided and approved such additional treatment and thereby assumed and acknowledged liability therefor under the Workmen's Compensation Act. The employment of Dr. Hirst in January 1930, could hardly be considered as a mere gratuitous contribution by the insurance company. It was unquestionably done in view of and as a part of the negotiations then in progress, at the suggestion of the representative of the commission, looking to an adjustment of compensation to be paid the employee and on that account. It will be recalled that the employer or insurer had originally furnished, as we understand the evidence, medical services by two of the doctors who treated claimant during the first sixty days after the injury, Dr. Sims and Dr. Diehr. ■ With this conclusion that the medical treatment so furnished by the insurer and employer in January, 1930, and some weeks thereafter was a part of the compensation provided for by the Workmen's Compensation Act we again quote the language of Section 3311, supra, which so denominates such treatment: "In addition to all other compensation the employee shall receive and the employer shall provide" medical treatment as therein provided. We also direct attention to this language of the statute preliminary to a quotation from the Court of Appeals' opinion which cites the authorities and so well reasons and disposes of the real issue presented on this appeal that we adopt and approve such portion of the opinion as follows:

"Thus it will be seen that Section 3311 specifically provides that medical treatment shall be considered as a part of the compensation the employee shall receive (Wheeler v. Mo. Pac. Railroad Co., 328 Mo. 888, 42 S. W. (2d) l. c. 581; Helle v. Eyermann Cont. Co. (Mo. App.), 44 S. W. (2d) l. c. 238), and since payments on account of an injury within six months preceding the date of the filing of the claim tolls the statute, it seems to us that since the rendition of medical services at the instance of the employer or his insurer comprises part of the compensation of the injured person, therefore, if the employer or his insurer has caused the rendition of medical services to the injured person, it constitutes the payment of compensation under the Workmen's Compensation Act (Elsas v. Montgomery Elevator Co., 330 Mo. 596, 50 S. W. (2d) l. c. 134) whether the employer or in-

surer has actually made payment for such services to the physician or not. The question of payment to the physician is a matter wholly between him and the person that employed him, and the mere fact that the physician has not been paid for his services by the one who employed him cannot affect the rights of the injured person who is not a party to the contract between such physician and his employer. If the employer or his insurer has engaged the services of a physician to render medical aid to an injured person, the rendition of such medical aid, in pursuance of such an arrangement, constitutes as to the injured person a payment on account of the injury. The bare rendition, of such services at ·the instance of the employer or his insurer is in and of itself a payment on account of the injury so far as the injured person is concerned.

"If we are to construe the sections involved in the manner en-joined upon us by the provisions of Section 3374, Revised Statutes 1929 (Mo. St. Ann. sec. 3374), that all provisions of the Workmen's Compensation Act shall be liberally construed with a view to the public welfare (State ex rel. Buttiger v. Haid, 330 Mo. 1030, 51 S. W. (2d) l. c. 1010) we do not see how those sections are susceptible of any other construction than that we have given them above."

The opinion in Murphy v. Burlington Overall Company, supra, decided by the Kansas City Court of Appeals, which case the St. Louis Court of Appeals deemed to be in conflict, to some extent, with its holding in the present case deals primarily with, and the decision therein turns upon and correctly determines, what constitutes the filing of a claim and in that respect is followed and cited by the St. Louis Court of Appeals in this case. Apparently on the facts of that case the observation. made in the Murphy case concerning payments for medical service was not the basis of the decision and in so far as such comment is susceptible of a construction contrary to the rule herein stated and adopted it is erroneous.

In view of the conclusions announced, it follows that the judgment of the circuit court must be reversed and the cause remanded to that court with directions to set aside its judgment and enter a judgment reversing the award of the commission and remanding the cause to the commission for further proceedings by it not inconsistent here-with. It is so ordered. *Sturgis* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All the judges concur.