Victor Ferrin, Appellant, v. Christopher Sales Co. et al., Respondents.—93 S. W. (2d) 52.

Kansas City Court of Appeals. February 17, 1936.

*Stubbs, McKenzie & Stubbs* for appellant.

*Mosman, Rogers, Bell & Buzard* and *Louis N. Wolfe* for respondents.

BLAND, J.—This is a compensation proceeding. The defense made before the commission was that claimant had failed to file, with the commission, his claim for compensation within six months after his injury and that no payments had been made to him on account of his injury. [Section 3337, Revised Statutes 1929.]

The proceedings were heard before one of the commissioners, who allowed compensation, finding that section 3337, Revised Statutes 1929, had been complied with. The award was reviewed by the full commission which found "That compensation should be denied, as it appears the claim is barred by the Statute of Limitations. The alleged accident occurred December 8, 1933. (The claim was filed on August 15, 1934.) The claimant worked at the office until December 20, and thereafter carried on his duties as a salesman by using the telephone at his home, between December 21, 1933, and March 12, 1934, during which time he was paid full salary by his employer, who did not know that he was claiming an accident 'arising out of and in the course of

his employment.' Therefore, the payment of wages could not be classed as payment of compensation." The commissioner, who allowed compensation in the first instance, dissented. Claimant appealed to the circuit court where the award of the commission was affirmed and he has appealed to this court.

The evidence shows that claimant was employed by the Christopher Sales Company, a wholesale grocery concern in Kansas City. There is a dispute in the testimony as to his duties. He testified: "I was buyer, assistant buyer, and office work and selling over the telephone." The witness Brumage, secretary and office manager of the employer, testified that claimant worked for the employer as a "salesman and some general office work." From the written statement given by the claimant to the insurance company it fairly appears that his title was that of salesman. What particular duties he had outside of those of a salesman is not disclosed in the testimony.

Claimant's evidence and statement show that he was assigned by his employer to a prescribed territory in which to sell groceries; that he had "no understanding as to how I cover it so long as I cover it;" that for this purpose he used his own automobile in connection with business calls and he also carried on his work by selling over the telephone; that he was injured on December 8, 1933 by jumping off of a loading dock while going to his automobile for the purpose of calling on a customer (apparently no one saw him jump off the dock); that he worked for eleven or twelve days after his injury, his leg swelling and paining him all of the time; that he told no one connected with the defendant except one of the salesmen how the accident happened; that he may have told some of the other employees at the office that he had sprained his leg but he did not tell them how he received the injury; that the leg got so bad that it was necessary for him to have his doctor come and see him at his home on December 19th or 20th; that the doctor examined him and told him to come to the doctor's office the next day for an X-ray picture, which claimant did.

The X-ray picture showed that claimant had suffered a fracture of the end of the tibia at the left knee. The doctor called it a "fracture sprain" and told him that he would be required to remain in bed for several weeks. Plaintiff testified that he thereupon went to his employer to see if he could make "arrangements to take my orders over the telephone so I would not lose my business;" that this arrangement was satisfactory to his employer so claimant went home and remained until the 11th or the 12th of March, when he returned to the office to work; that most of the time he was at home his leg was in a cast and he was in bed; that during the time that he was at home various employees and officers of the company visited him; that during the time that he was at home he took orders over the telephone;

that he took what orders he "could get over the telephone and then I would in turn telephone them into the office. Q. And you took your salary right along and took care of what little work you could at home? A. Yes, sir."

Claimant further testified that he did not know that his accident was compensable and did not know that his employer carried insurance and did not approach it in reference to compensation until the matter had been suggested to him by others. So on May 6, 1934, he talked with Mr. Christopher, an officer of the employer, about the matter and discovered that his employer carried insurance. He, then, for the first time apparently, disclosed to his employer how and where he had been injured. The employer caused a representative for the insurance company to come to its place of business who there talked to the claimant and arranged with the latter to call at the office of the insurance company. This the claimant did on May 8 and there gave the insurance company a written statement, which statement was introduced in evidence.

Claimant further testified: "I made a statement for them and they asked me to mail my X-ray bill to them and I did that and they said they would take it up with some higher office and would let me know." He also testified: "I kept calling the insurance company and they kept telling me to call in another couple of weeks and I would put it off and call again, and the next time Mr. Kinsey (a representative of the insurance company) told me to come up the following week, and I went up there and Mr. Kinsey was on his vacation and there was a Mr. Felton up there to take his place."

As before stated, no claim for compensation was filed by the claimant with the commission until August 15, 1934, or eight months and seven days after the day of his injury.

Mr. Brumage testified that claimant was employed in the capacity of salesman and "some general office work" and that as to the office work it was necessary for the witness, when insured was injured, to make arrangements to take care of that part of the work of the claimant, which was done by the witness by dividing it up among the other employees; that while claimant was away from work the latter performed a part of his work. "He took care of some of his customers over the telephone;" that the employer continued to pay claimant his regular salary; that "It has been our habit if any employer has been faithful and loyal we will pay their salary as long as they are away." . . . "As long as a person is away from work, regardless of how hurt, we will pay them."

There is no contention made that the claim is barred because claimant failed to comply with section 3336, Revised Statutes 1929, requiring notice to the employer of the accident.

It is insisted by claimant that, while no formal written claim was filed with the commission within six months after his injury, payments were made by the employer "on account of the injury" of claimant within six months prior to the filing of the claim. In this connection claimant contends that he performed at home only a small part of his whole duties, although he was paid his full salary; that to the extent his duties were not performed the salary paid him was paid as compensation and, therefore, "on account of the injury."

It is well established that, in reviewing the evidence, we must take it, and all reasonable inferences that may be drawn therefrom, in a light most favorable to support the finding of the commission. [Bricker v. Gille Mfg. Co., 35 S. W. (2d) 662; Cotter v. Valentine Coal Co., 222 Mo. App. 1138.] In its findings or award the commission speaks of no duties that claimant was employed to perform other than those of salesman. While Brumage testified that claimant was employed as salesman and "some general office work" what the office duties were, other than those connected with claimant's work as a salesman including selling over the telephone, is not disclosed in the evidence, and it was within the province of the commission to disbelieve them when they testified that claimant had other duties than those of a salesman, or to believe that, if he had other duties, they were but of a minor nature. There is likewise no evidence as to what duties claimant had to perform as a salesman that he did not actually and substantially perform while at home by using the telephone. There was some testimony, which the commission was not required to believe, which would indicate that he was not able to perform those duties in full. If he was unable to perform them in full there is nothing to show to what extent he was unable to perform them. Even if he could not perform them in full if he was able to substantially discharge all of his duties there is no question but that the salary he was paid was not on account of his injury. [Murphy v. Overall Company, 225 Mo. App. 866; McConnell v. Hennessy, 44 S. W. (2d) 195.] Indeed, it would be difficult to arrive at the conclusion that his salary was paid on account of his injury, in view of the fact that his employer, while the salary was being paid, did not know how or where he had been injured, and therefore it did not know whether it was connected with his employment. [O'Malley v. Mack International Truck Corp., 31 S. W. (2d) 554, 557.] In addition, there was evidence that claimant was paid his salary because his employer always paid salary to its employees, who had been faithful and loyal, when they were away from work. If this testimony is to be believed, it would appear (though we need not so decide) that claimant's salary was not paid on account of his injury but as a gratuity in part and salary in part.

Claimant calls our attention to the following testimony of Brumage:

"Q. Did you pay him his salary? A. He received his salary all of the time he was away from work. I think with few exceptions I took it out to him on my way from work.

"Q. And that was because of the injury he received? A. Yes, sir."

Claimant claims that this testimony of the witness shows that claimant's salary was paid on account of his injury. On the other hand, defendant contends that the witness meant that he took claimant's salary to him because the latter was unable to come to the office for it because of his injury. The testimony is somewhat ambiguous and the commission evidently viewed it as defendant does. This was a reasonable conclusion as Brumage testified that, during that time, he was not advised that claimant was suffering from an injury that occurred in the course of the latter's employment and it is difficult to understand how this testimony could be construed as claimant contends in view of the fact that neither Brumage nor anyone else representing the employer knew (during the time the salary was paid) how or where claimant was injured and therefore, whether his injury was connected with his employment. It is true that some of the employees of defendant knew about the accident but they were not those who had any duty to perform for the defendant such as to give them authority to receive notice of the injury.

We have examined the cases cited by the defendant and find them not in point. In the case of Elsas v. Montgomery Elev. Co., 50 S. W. (2d) 130, the payments that were held to have been made on account of the employee's injury were made by the insurance company. In McEneny v. S. S. Kresge Co., 62 S. W. (2d) 1067, the employee was unable to, and did not perform any of her duties, yet, the employer paid her full wages during all of the time that she was unable to work. The opinion holds that treatments by a doctor, within six months of the filing of the claim, which doctor was employed by the insurance company, constituted payments on account of the injury although the doctor was not paid for his services.

Under all of the circumstances the judgment should be affirmed and it is so ordered. All concur.