Arvil COTTON, Plaintiff-Respondent,

v.

VOSS TRUCK LINES, INC., and Transport Insurance Company, Defendants-Appellants.

No. 8363.

Springfield Court of Appeals.

Missouri.

June 7, 1965.

Moser, Marsalek, Carpenter, Cleary & Jaeckel, St. Louis, for defendants-appellants.

Padberg & Raack, St. Louis, for plaintiff-respondent.

STONE, Judge.

Arvil Cotton (hereinafter called the employee) instituted this proceeding under the Missouri Workmen's Compensation Act [V.A.M.S. Chapter 287] against Voss Truck Lines, Inc., his employer, and its insurer, Transport Insurance Company, by the filing of his claim with the Division of Workmen's Compensation on May 8, 1962. In his claim, the employee alleged that, on May 12, 1959, while at a truck stop near Rolla, Phelps County, Missouri, he had sustained an accident thus described, "was hooking up some trailer lines to a tractor unit and was stepping on a butane tank to alight from putting on the lights and slipped off due to grease on the tank," and that, as a result of the accident, his "lumbar back, right side and genitals" had been injured. By their answer, the employer and insurer denied that "either permanent total or permanent partial disability of any part of the employee's body resulted from the alleged accident" and asserted that the employee could not maintain his claim (a) because he had failed to give the employer or insurer written notice of accident within

the time prescribed by Section 287.420 and (b) because the claim had not been filed within the time permitted by Section 287.-430. (Except as otherwise specifically stated, all statutory references are to RSMo 1959, V.A.M.S.)

Upon hearing, the referee awarded to the employee $208.93 for temporary total disability ($37.50 per week for a "healing period" of 5⁴⁄₇ weeks beginning as of May 13, 1959), $2,250 for 15% permanent partial disability of the body as a whole ($37.50 per week for 60 weeks beginning as of July 6, 1959), and $215 for medical aid, the total amount of the award being $2,673.93. See Section 287.190; Laws of 1957, p. 560. On the employer's and insurer's application for review [Section 287.480], the Industrial Commission, after hearing oral arguments and considering written briefs, adopted the referee's findings of fact and conclusions of law and affirmed his award. Being cast again upon appeal to the Circuit Court of Phelps County [Section 287.490] by affirmance of the final award of the Commission, the employer and insurer, still protesting, come to us.

▨ The primary contention of the employer and insurer has been and still is that the employee's claim filed on May 8, 1962, almost three years after the accident on May 12, 1959, was barred by the statute of limitations which provides that "[n]o proceedings for compensation . . . shall be maintained unless a claim therefor be filed with the commission within one year after the injury or death, or in case pay-

ments have been made on account of the injury or death, within one year from the date of the last payment." Section 287.430. It has long been settled that the furnishing of medical aid by an employer or insurer to an injured employee constitutes such payment on account of the injury as tolls the running of the statute of limitations,[1] and that this is so regardless of whether such aid is furnished voluntarily or under compulsion of law.[2] And it is equally clear that, if an employer or insurer has made itself legally liable for such aid, it is of no consequence that the physician or hospital rendering the aid has not received actual payment.[3]

In the instant case, the *employer's and insurer's position* is that, when the employee indicated a need for medical attention, the employer tendered the services of "the company doctor, Dr. Demco," but that the employee "rejected the services of the company doctor and elected to engage the services of Dr. Meador," so that whatever services the latter may have rendered to the employee did not become "the responsibility of the employer or insurer" [see Section 287.140(1)] and, therefore, did not toll the running of the one-year statute of limitations. This (so counsel insist) was established by "the positive testimony of the employee" by which he is "conclusively bound." On the other hand, the *employee's position* is that "the employer acquiesced in and adopted Dr. Meador as the treating physician," rendering the employer and insurer legally liable

1. Buecker v. Roberts, Mo.App., 260 S.W. 2d 325, 326(1); Thomas v. Baker-Lockwood Mfg. Co., 236 Mo.App. 1248, 163 S.W.2d 117, 119(2); Morrow v. Orscheln Bros. Truck Lines, 235 Mo.App. 1166, 151 S.W.2d 138, 142(1); Blahut v. Liberty Creamery Co., Mo.App., 145 S.W.2d 506, 508(1). See also Myers v. Cap Sheaf Bread Co., 354 Mo. 943, 192 S.W. 2d 503, 504(1); Martensen v. Schutte Lumber Co., 236 Mo.App. 1084, 162 S.W. 2d 312, 317(4).

2. Buecker v. Roberts, supra, 260 S.W.2d at 326(1); Buecker v. Roberts, Mo.App.,

200 S.W.2d 529, 533; Mussler v. American Car & Foundry Co., Mo.App., 149 S.W.2d 429, 431(3); Parker v. St. Louis Car Co., Mo.App., 145 S.W.2d 482, 485 (4).

3. McEneny v. S. S. Kresge Co., 333 Mo. 817, 62 S.W.2d 1067, 1070; Buecker v. Roberts, supra, 260 S.W.2d at 326(1); Thomas v. Baker-Lockwood Mfg. Co., supra, 163 S.W.2d at 119(3); Morrow v. Orscheln Bros. Truck Lines, supra, 151 S.W.2d at 143(4).

for such treatment (which continued to the time of hearing) and tolling the running of the one-year statute of limitations.

■ With the foregoing statements of basic principles and adversary contentions before us, we turn to the facts, according appropriate and required recognition to the applicable precept that, although on judicial review the circuit court was in the first instance, and this court is on appeal, authorized to determine whether, upon the entire record, the Commission reasonably could have made the findings and award under consideration, this does not mean that either court should substitute its own judgment on the evidence for that of the Commission, but that, on the contrary, a reviewing court may set aside the findings and award of the Commission only if they are clearly contrary to the overwhelming weight of the evidence, when the evidence in its entirety, including all legitimate inferences reasonably deducible therefrom, is viewed in the light most favorable to such findings and award.[4]

In maneuvering around a parked automobile at the truck stop near Rolla about dusk on May 12, 1959, the employee jack-knifed his unit and pulled loose the air and electrical cords between the tractor and trailer. When, after reconnecting those cords, he stepped back onto some grease on the top of the fuel tank, his feet slipped and he fell some three or four feet, landing on the driveway in a sitting position. "It more or less stunned me at the time . . . It hurt, but I didn't realize I was injured seriously." He sat in the cab for a short time and then walked around some before continuing on his run to St. Louis. After checking into the St. Louis terminal about 9 P.M., he went home. By the next morning, he was having considerable pain in the "small of [his] back . . . right lower side

and right testicle," but nevertheless he left St. Louis early that morning on a run to Springfield. That was his last trip before he laid off work for a period of about eight weeks.

Norman E. Krutzman, then manager of the employer's St. Louis terminal, was gone when the employee checked into the terminal on the evening of May 12, 1959, the date of accident. Either "the next day . . . or the following day after that . . . the first time I could make contact with him after the accident," the employee orally reported the accident to Krutzman by telephone. "I told him what happened and that I was going to have to take some time off." Krutzman said "to call him when I felt like working."

Some time elapsed, "probably a week or two," before "I made up my mind I was going to have to go to the doctor." At the hearing, the employee was "sure" that he had "discussed it" with Krutzman "before I ever went to the doctor," but the record is silent as to what was said by either party on that occasion. In any event, the employee first received medical care when he consulted James R. Meador, M.D., at his office in Clayton, St. Louis County, on a date fixed by the doctor's records as having been May 29, 1959; and *"the main discussion"* (hereinafter referred to as such) between the employee and Krutzman concerning medical care was on the following day, i. e., on May 30, when the employee first talked with Krutzman over the telephone and then went to his office. We record verbatim the employee's testimony concerning "the main discussion" (characterized by counsel for the employer and insurer as "positive testimony" conclusively establishing their contention that the employee "rejected the services of the company doctor and elected to engage the services of Dr. Meador"):

4. Heaton v. Ferrell, Mo.App., 325 S.W.2d 800, 802(1); Barton v. Western Fireproofing Co., Mo.App., 326 S.W.2d 344, 345(1); Hance v. Johnson, Stephens & Shinkle Shoe Co., Mo.App., 306 S.W. 2d 80, 83(5–7); Garrison v. Campbell "66" Express, Inc., Mo.App., 297 S.W. 2d 22, 30(8), and cases collected in footnote 11.

"I told him [Krutzman] I had been to the doctor and it looked like I was going to have to have some medical attention and he said, 'Well, you know we have our company doctor who is available to you,' and I told him I realized that but the main reason I was there was to find out if it was possible for me to go to my own doctor, at which time he told me that it was . . . The best I can recall he said he seen no point in me going to two different doctors and that I was covered by insurance and I had the right to choose my own doctor, possibly he would later want me to see the other doctor . . . Dr. Demco," identified as "the company doctor." When asked for "any discussion at that time with Mr. Krutzman relative to whether the company would or would not pay Dr. Meador," the employee answered, "his statement was that his insurance company was responsible for it no matter who I went to," this response properly having been received in evidence as being relevant to the primary factual issue, to wit, whether or not the employer (acting by and through Krutzman) authorized medical treatment of the employee by Dr. Meador.

When pressed on cross-examination to state why he had asked Krutzman "if it would be all right to go" to Dr. Meador, the employee said that "there were several reasons" and then detailed two of them, namely, (1) that "the company doctor [Dr. Demco] was so far from my home, I was having trouble driving"—it "was at least an hour" to Dr. Demco's office but only "approximately twenty minutes" to Dr. Meador's office, and (2) that "truthfully I didn't have too much trust in the company doctor and I thought I should be able to choose my own doctor."

Robert L. Martin, a fellow driver who testified that he was present and heard the conversation between the employee and Krutzman, substantially confirmed the employee's account of it. As Martin related it, "Mr. Cotton [the employee] told Mr. Krutzman it hurt him too bad to drive in a car clear down there" to Dr. Demco's office—"it was a long ways to drive down to Dr. Demco, wouldn't it be all right for him to go to his family doctor," and Krutzman said "he thought yes, that would be all right, since he [the employee] was in the condition he was in he should go to the family doctor, there wasn't any sense in having to pay two doctors."

Krutzman, employed by another truck line at the time of hearing, was called as a witness for the employee. He verified the fact that the accident under consideration had been reported to him by the employee, although he frankly conceded that he could not fix the precise date of any conversation—"I don't remember dates and I am not going to tell you I do." But his recollection was positive in this area: "I very definitely remember this, that we had a standing order so to speak with Transport Insurance Company [the insurer], issued to me by Mr. Bonnett [the St. Louis branch claim manager], that any employee hurt on the job . . . there was an outstanding rule that anybody hurt on the job they could pick out any physician or M.D., as long as it (sic) was a reputable one, and I told Mr. Cotton [the employee] he could go to any man he wanted to but the insurance company also wanted him to go to the company doctor and have him make an examination too." Krutzman did not recall that the name of Dr. Meador was mentioned in that conversation; but, in the course of his testimony, he identified the original "Report of Injury" (on Form 1 used by the Division of Workmen's Compensation) signed by him under date of July 7, 1959, and admittedly received at the insurer's St. Louis claim office on July 8, 1959, which gave the "name and address of attending physician" as "Dr. Meador, 4 S. Central, Clayton, Mo."

Of course, the failure of an employer (and its insurer) "within ten days after knowledge of an accident resulting in personal injury to an employee, [to] notify the commission thereof, and . . ., within one month, [to] file with the commission . . . a full and complete report of every injury . . . to any employee for which

the employer would be liable to furnish medical aid or compensation," as Section 287.380(1) plainly directs, does not toll the running of the one-year statute of limitations [Section 287.430], notwithstanding the fact that such failure renders it impossible for the Commission to "inform the employee generally of his rights" [Section 287.400] under the Missouri Workmen's Compensation Law. Price v. Kansas City Public Service Co., 330 Mo. 706, 50 S.W.2d 1047; Armstrong v. Union Electric Light & Power Co., Mo.App., 60 S.W.2d 1013, 1014(1). However, it may be observed in passing that, although Krutzman's form report of the employee's injury was received by the insurer on July 8, 1959, it was not filed with the Division of Workmen's Compensation until May 15, 1962, after the employee's "Claim for Compensation" had been filed. And it may be noted that this form report not only identified Dr. Meador as the attending physician but also showed that "employee returned to work" on "7–6–59," almost eight weeks after the date of accident. Neither the employer nor the insurer made any monetary payment of compensation or for medical aid.

■ In urging their contention that "the positive testimony of the employee" by which he was "conclusively bound" established that the employee "rejected the services of the company doctor and elected to engage the services of Dr. Meador," counsel for the employer and insurer emphasize (in addition to the employee's testimony concerning "the main discussion" with Krutzman on May 30, 1959) the following questions and answers in the employee's cross-examination: "Q. Now, when you went to Dr. Meador, you told him you were engaging his services? A. I did. Q. You never at any time told him you were not engaging his services? A. No sir. Q. The services of Dr. Demco, the company doctor, were tendered to you, were they not?

A. If I chose to use him, yes. Q. And you did choose to use Dr. Meador? A. Right." *Standing alone,* the quoted questions and answers might have the force and effect accorded to them by counsel. But *taking the employee's testimony as a whole,* as we must do,[5] we are of the opinion that it may not rightly be characterized as "positive testimony" reasonably susceptible of no interpretation or construction other than that placed upon it by counsel for the employer and insurer.

■ Rather, we are convinced that, on the record as a whole, the referee fairly and reasonably could have made (as he did) the following findings which, upon review, were adopted by the Industrial Commission: "In finding that the employer and insurer are responsible for the services of Dr. James Meador (thereby rendering them responsible for medical bills incurred as the result of his treatment and thereby tolling the statute of limitations) I find that the employer, through the action of their person in authority, Norman E. Krutzman, who testified for the employee, acquiesced in the use of Dr. Meador as its treating physician. This was established by the testimony of both the claimant and Mr. Krutzman to the effect that the employee requested permission to use Dr. Meador rather than Dr. *Demko,* and that Mr. Krutzman told the employee that, in accordance with company policy, this would be satisfactory with the employer. The crux of the dispute in this case centers around the insurer's contention that this conversation ["the main discussion" between the employee and Krutzman on May 30, 1959] constituted an election by the employee to use Dr. Meador as his own physician at his own expense. This contention I specifically reject for the reason that the employee did not need to get permission of Mr. Krutzman to incur his own medical bills and the only reasonable inference to be drawn from Mr. Krutzman's

5.  Dimond v. Terminal R. R. Ass'n. of St. Louis, 346 Mo. 333, 353, 141 S.W.2d 789, 799(12); Haire v. Stagner, Mo.App., 356 S.W.2d 305, 310(6); Garrard v. State Dept. of Public Health & Welfare, Mo. App., 375 S.W.2d 582, 592(25); Lane v. Wilson, Mo.App., 390 S.W.2d 943, 945 (2).

authorization to use Dr. Meador is that it was the employer's intention that it be responsible for these bills. This inference is also supported by testimony of Mr. Bonnett [insurer's St. Louis branch claim manager] on cross-examination indicating that the employer, on several occasions, requested the insurer to pay these bills, which also indicates the intention of the parties at the time of the original coversation between Mr. Krutzman and the employee." See particularly Morrow v. Orscheln Bros. Truck Lines, 235 Mo.App. 1166, 151 S.W.2d 138, 143.

At this point, we quote also the significant and meaningful statement of the referee, incorporated in his findings of fact, that "[i]n evaluating the testimony in this case I am impressed by the straightforward convincing manner in which the employee and Mr. Krutzman presented their testimony, and I do not feel that this testimony was impeached, either directly or by inference, by the testimony of three employees of the Transport Insurance Company [the insurer] for the reason that none of this testimony is sufficient to prove that the employer did not authorize the employee to use Dr. Meador."

■■ We need not determine, and accordingly do not say, that the referee and the Industrial Commission drew (as they thought) "the only reasonable inference" permissible upon the record. For, on judicial review the inquiry is whether, upon the entire record, the Commission reasonably could have made the findings and award under consideration, *not* whether a contrary conclusion might have been permissible.[6] If from the evidence as a whole two different inferences or conclusions may be drawn as to the ultimate fact at issue, each of such inferences or conclusions being consistent with the testmony, and each inconsistent with the other, it is for the triers of the facts to draw the inference and determine the issue and such determination does not become a matter of law.[7] Thus, in the instant case, it is immaterial what our findings and conclusion might have been if we had heard the evidence originally. Davis v. Brezner, Mo.App., 380 S.W.2d 523, 529; Slider v. Brown Shoe Co., Mo. App., 308 S.W.2d 306, 310(6); Blair v. Armour & Co., Mo.App., 306 S.W.2d 84, 89. Suffice it to say that, as we already have indicated, our opinion is that the above-quoted findings of the referee and the Commission were, upon the entire record, permissible and not clearly contrary to the overwhelming weight of the evidence. Aside from the patent factual differences between the case at bar and the only two workmen's compensation cases cited in employer's-insurer's brief which dealt with alleged rejection of medical services tendered by an employer, it is worthy of note that in each of those cited cases the appellate court simply *affirmed as permissible the finding of the Commission* that the employee had, within the contemplation and meaning of Section 287.140(1), rejected the tendered services and elected to engage a physician of his own selection at his own expense. Sams v. Hayes Adhesive Co., Mo.App., 260 S.W. 2d 815, 820(7); Moorman v. Central Theatres Corp., Mo.App., 98 S.W.2d 987(5, 7).

In another point, counsel for the employer and insurer argue that, "assuming, but denying, that the services rendered the

6. Karch v. Empire Dist. Elec. Co., 358 Mo. 1062, 1070, 218 S.W.2d 765, 770; Francis v. Sam Miller Motors, Inc., Mo., 282 S.W.2d 5, 13; Vandaveer v. Reinhart & Donovan Const. Co., Mo.App., 370 S.W.2d 156, 163; Gregory v. Lewis Sales Co., Mo.App., 348 S.W.2d 743, 747 (5); Davis v. McKinney, Mo.App., 303 S.W.2d 189, 193(7).

7. Sanderson v. Producers Commission Ass'n, 360 Mo. 571, 579, 229 S.W.2d 563, 567–568(7); Karch v. Empire Dist. Elec. Co., supra, 358 Mo. at 1071, 218 S.W.2d at 771; Arnold v. Wigdor Furniture Co., Mo., 281 S.W.2d 789, 797(9); Ashwell v. United States Seed Co., Mo.App., 167 S.W.2d 950, 952–953(2, 3). See Shrock v. Wolfe Auto Sales, Inc., Mo., 358 S.W. 2d 812, 815(4); Damore v. Encyclopedia Americana, Mo., 290 S.W.2d 105, 108(6).

employee by Dr. Meador could be said to have been rendered under circumstances constituting him the employer's doctor, nevertheless such relationship would not have endured beyond ninety days after the injury without a special order of the Commission." See Section 287.140(1). No such order having been made, counsel say that the one-year statute of limitations [Section 287.430] in any event began to run ninety days after May 12, 1959, the date of accident, so that the claim filed on May 8, 1962, was barred anyway.

■ It is true that Section 287.140(1) provides that the employer shall furnish needed medical and related services "for the first ninety days after the injury or disability . . . and thereafter such additional similar treatment as the commission by special order may determine to be necessary." However, under the findings of the Commission (which, as we have said, on the record before us we have no right to set aside) Dr. Meador indeed did become, during the period of ninety days after the date of the employee's injury, "the employer's doctor" to furnish to the employee needed medical aid to cure and relieve from the effects of the injury. Nothing in Section 287.140 (or, for that matter, elsewhere in the Missouri Workmen's Compensation Law), upon expiration of the initial period of ninety days after the date of the employee's injury, worked any change in, or termination of, Dr. Meador's *status* as "the employer's doctor" to furnish needed medical aid to the employee. So, in the absence of evidence of any change in such *status,* it must be presumed to have continued

through the subsequent course of treatment by Dr. Meador to the time of the filing of the employee's claim. For it is well-settled that a status once shown to exist will be presumed to have continued, absent any showing to the contrary.[8] The continued furnishing of medical aid by the employer through Dr. Meador after the first ninety days following the injury, without a special order therefor [Section 287.140(1)], waived the statutory requirement for any such order[9] and tolled the running of the statute of limitations.[10] The point under discussion is without merit.

■ The only other point presented on this appeal is that "the finding by the referee, adopted by the Industrial Commission, that 'the employee sustained fifteen per cent permanent partial disability of the body as a whole, referable to his lower back,' is not supported by the record." Dr. Meador diagnosed the employee's injuries as "low back strain and epididymitis," expressed his "opinion based upon a reasonable degree of medical certainty" that there was a causal connection between the employee's accident and his injuries and that both the low back strain and epididymitis were in some measure permanent, and rated the employee's permanent partial disability at fifteen per cent of the body as a whole. Because the above-quoted finding of the referee, adopted by the Commission, was "fifteen per cent permanent partial disability of the body as a whole, referable to his lower back," without specific mention of epididymitis, counsel for the employer and insurer argue that both the referee and the Commission "rejected the doctor's testimony that there was a

8. Eberle v. Koplar, Mo.App., 85 S.W.2d 919, 921(1); Graham v. St. Louis & S. F. Ry. Co., Mo.App., 273 S.W. 221, 224(4); Westinghouse Elec. & Mfg. Co. v. Hodge, 181 Mo.App. 232, 167 S.W. 1186, 1187(2); Sisk v. American Central Fire Ins. Co., 95 Mo.App. 695, 69 S.W. 687, 692(7). See Nelson v. Jones, 245 Mo. 579, 151 S.W. 80, 82(2); Sanderson v. New York Life Ins. Co., 239 Mo.App. 688, 194 S.W.2d 221, 227(8); Preston v. Preston, Mo.App., 342 S.W.2d 956, 958(4).

9. McEneny v. S. S. Kresge Co., supra, 333 Mo. at 824, 62 S.W.2d at 1070(3); Buecker v. Roberts, supra, 260 S.W.2d at 327(2); Morrow v. Orscheln Bros. Truck Lines, supra, 151 S.W.2d at 142(2); Blahut v. Liberty Creamery Co., supra, 145 S.W.2d at 509(2); Curtin v. Zerbst Pharmacal Co., 229 Mo.App. 82, 72 S.W. 2d 152, 155.

10. See cases cited in footnote 1, supra.

causal connection between the accident and the epididymitis" and that Dr. Meador's rating, which took into account both the low back strain and epididymitis, did not support the finding.

We do not attach such significance to the failure of the referee and the Commission to make specific mention of epididymitis, and we are unwilling, on the attenuated and hypercritical argument of counsel, to agree with them that Dr. Meador's rating does not afford support for the Commission's finding of fifteen per cent permanent partial disability of the body as a whole. That was a finding of fact within the special province of the Commission [Barron v. Mississippi Lime Co. of Missouri, Mo.App., 285 S.W.2d 46, 48(1)], and we review it (as we do all other findings of fact) under the applicable precept that we may not substitute our judgment on the evidence for that of the Commission and may set aside the finding only if it is clearly contrary to the overwhelming weight of the evidence, when the evidence in its entirety, including all legitimate inferences reasonably deducible therefrom, is viewed in the light most favorable to the finding. See cases cited in footnote 4, supra. Without further extending this opinion by the recitation of needless evidentiary detail, we conclude that, with proper regard for the stated principle limiting the nature and scope of judicial review in cases of this category, we may not set aside the Commission's finding as to the extent of permanent partial disability. See Worley v. Swift & Co., Mo.App., 231 S.W. 2d 828, 832(3, 4); Johnson v. Fogertey Bldg. Co., Mo.App., 194 S.W.2d 924, 929–930(1–5).

The judgment of the circuit court affirming the final award of the Industrial Commission is affirmed here.

RUARK, P. J., and HOGAN, J., concur.